GROTELUESCHEN v GROTELUESCHEN

Docket No. 54408. Submitted January 8, 1982, at Detroit.—Decided February 18, 1982. Leave to appeal applied for.

Edgar W. Grotelueschen sought a divorce from Lelah L. Grotelueschen in Oakland Circuit Court. Robert B. Webster, J., entered a judgment of absolute divorce. Defendant appeals, claiming that the trial court erred in granting the divorce and in the distribution of the assets of the parties. Plaintiff cross-appeals, claiming that the trial court erred in the distribution of the assets. *Held:*

1. Since the record established that defendant had left the marital home, that plaintiff was cohabitating with another woman with whom he had jointly purchased a house and that plaintiff was unwilling to cooperate in salvaging the marriage, the trial court properly found that there had been a breakdown in the marital relationship such that the objects of matrimony had been destroyed. There was no error in granting an absolute divorce under such circumstances.

2. The trial court properly treated defendant's savings resulting from inheritances received upon the deaths of her mother and daughter and the equity in a home jointly owned with another daughter as part of her separate estate rather than marital estate, since plaintiff's contribution to the acquisition, improvement or accumulation of the same was minimal and there was adequate support for plaintiff without reaching those assets.

3. Plaintiff's military pension benefits should not have been included as part of the marital estate; however, since the trial

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 24 Am Jur 2d, Divorce and Separation § 24.

[2] 24 Am Jur 2d, Divorce and Separation § 1.

[3] 24 Am Jur 2d, Divorce and Separation § 928.

[4] 24 Am Jur 2d, Divorce and Separation §§ 632, 633.
    Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.

[5] 24 Am Jur 2d, Divorce and Separation § 632.

[6] 4 Am Jur 2d, Appeal and Error § 868.

court awarded such benefits to plaintiff and the division of property was fair irrespective of consideration of the pension benefits, reversal of the trial court's award is not mandated.

4. The record supports the trial court's award of alimony to defendant.

Affirmed.

1. DIVORCE — NO-FAULT DIVORCE — EVIDENCE.

The objects of matrimony are destroyed within the meaning of the divorce statute where either party to the marriage is unwilling to live together with the spouse (MCL 552.6[3]; MSA 25.86[3]).

2. DIVORCE — NO-FAULT DIVORCE — EVIDENCE.

An absolute divorce is properly granted where it is shown that the husband is cohabitating with another woman, has jointly purchased a house with that woman and is unwilling to cooperate in salvaging the marriage, since under such circumstances the objects of matrimony have been destroyed.

3. DIVORCE — MARITAL ASSETS — INHERITANCE.

A wife's inheritance may be treated as a marital asset subject to division upon divorce where the husband contributed to the acquisition, improvement or accumulation of such property or where failure to consider such property would result in an award which is insufficient to maintain either party; however, where the husband's contribution is, at best, indirect and minor in nature and the marital assets are otherwise ample, the trial court may exclude such inheritance from the marital estate.

4. DIVORCE — MARITAL ASSETS — SCHOOL RETIREMENT BENEFITS.

School retirement benefits may not be considered to be part of the marital estate subject to division upon divorce (MCL 38.225; MSA 15.893[25]).

5. DIVORCE — MARITAL ASSETS — MILITARY PENSION BENEFITS.

It is error to consider military pension benefits as a marital asset subject to distribution on divorce; however, where such military pension benefits were considered as a marital asset and were given to the person entitled to such benefits and the division of the marital estate is otherwise fair under the circumstances, irrespective of a consideration of the military pension benefits as part of the marital estate, reversal of the order of property division is not mandated.

6. DIVORCE — APPEAL.

The Court of Appeals reviews orders of division of marital assets

and awards of alimony *de novo;* however, the Court of Appeals generally will not reverse the decision of the trial judge unless it is convinced that, if sitting in the trial court's position, it would have reached a different result.

*Judith Dennehy Doran,* for plaintiff.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P. C.* (by *Jerome J. Krasa),* for defendant.

Before: BASHARA, P. J., and T. M. BURNS and ALLEN, JJ.

ALLEN, J. Both parties appeal of right from a judgment of divorce entered October 8, 1981, granting plaintiff husband a divorce on his complaint filed July 11, 1979. The issues involved on appeal pertain to the propriety of the grant of divorce and to the equity of the division of the marital estate.

The parties were married December 12, 1945, and separated some 32 years later in 1977. At the time of trial, plaintiff was 60 years of age and defendant was 58. Two children were born of the marriage, one of whom, Martha, died in 1977, and the other, Nancy, age 30, with whom defendant lives and helps bring up two children left by Martha, a divorcee at the time of her death. Defendant and Nancy are co-guardians of Martha's two children and receive approximately $900 per month in social security benefits for the children's support. Between August, 1977, when she left the marital home, and January, 1979, defendant lived with Nancy but returned to the marital home in Royal Oak each day tending to household chores. In January 1979, plaintiff left the marital home and took up residence with another woman. At the time of trial, plaintiff was visiting the marital home briefly once each week.

Throughout the marriage, plaintiff was employed, first on active duty with the United States Army and since 1961, as supervisor of transportation with the Troy School District at an annual salary slightly in excess of $18,000. Between 1962 and 1972, defendant was employed full time, and since 1972, worked part time as a cashier. Her earnings were contributed to the parties' joint banking accounts. At the date of trial, the parties had accumulated marital estate valued at approximately $265,982.

The initial issue raised on appeal is whether the trial court erred when it granted a divorce. Defendant argues that even though Michigan has abolished the traditional fault basis for divorce, it still is incumbent upon the moving party to allege and prove in open court the grounds for divorce. According to defendant, little more was alleged or proven than "normal marital bickering"[1] over plaintiff's drinking problem, a situation which did not support a conclusion that the marriage had broken down or that there was no reasonable likelihood that the marriage could be preserved. We strongly disagree.

MCL 552.6(3); MSA 25.86(3) provides:

"The court shall enter a judgment dissolving the bonds of matrimony if evidence is presented in open court that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved."

If either party in a marriage relationship is unwilling to live together, then the objects of matri-

---

[1] In *Winkelman v Winkelman,* 20 Mich App 305, 306; 174 NW2d 46 (1969), it was held that the marital friction must exceed that of "normal marital bickering" in order for the court to grant a divorce.

mony have been destroyed. *What "No-Fault" Means to Divorce,* 51 Mich State Bar J 16, 18 (1972), *Kretzschmar v Kretzschmar,* 48 Mich App 279, 284-285; 210 NW2d 352 (1973).

Here, the parties separated in July or August 1977, when defendant began sleeping at her daughter's home. Between that date and January 1979, the parties never spoke. In January 1979, plaintiff moved out of the marital home to cohabit with another woman. He has a relationship with this woman, and they have jointly purchased a home. There is no indication that plaintiff is willing to cooperate in salvaging the marriage. Thus, there has been a breakdown in the marital relationship to the extent that the objects of matrimony have been destroyed. While defendant genuinely believes that the marriage could be preserved, we conclude from the record that such a reconciliation is not reasonably likely. *Kretzschmar, supra,* 286. Because the grounds for a divorce were presented by plaintiff in open court, the trial court did not err when it granted a decree of absolute divorce.

The second and more difficult issue concerns the propriety of the trial court's division of property. Testimony given at trial established that the total value of the parties' holdings at the time of trial, including their separate estates, was $264,976. However, this sum is substantially reduced once the parties' separate estates, as determined by the trial court, are deducted. Three items amounting to $67,581 were treated by the trial court as the wife's separate estate and awarded to defendant in their entirety (less $5,000).[2] Additionally, the trial

[2] The three items awarded to the wife as her separate estate were as follows. The first was a $16,747 savings account in the wife's name. The initial deposit of $5,000 came from defendant's inheritance when her mother died. The balance of the account grew as the result of

court found that plaintiff's right to retirement benefits in the Troy school system were the separate estate of the plaintiff.

Both parties strongly dispute the trial court's findings of separate estates. Defendant contends that the $5,000 received as an inheritance from her mother should never be made a part of the marital estate. Citing *Charlton v Charlton,* 397 Mich 84; 243 NW2d 261 (1976), plaintiff argues that because he paid the taxes on the interest earned on the two savings accounts in his wife's name, the entire amount of $67,581 should be made part of the marital estate and subject to division by the trial court.

In *Charlton,* the Supreme Court held that a wife's inheritance may be treated as part of the marital estate to be divided by the court "if the husband had contributed to the 'acquisition, improvement or accumulation of such property' or if an award otherwise was insufficient to maintain either party". *Id.,* 94. Plaintiff claims that, unless the wife's savings accounts are considered part of the marital estate, any award would be insufficient for his support. We are not persuaded. As is noted later in this opinion, there are ample divisible assets to provide plaintiff with support. Furthermore, the trial court's treatment of $5,000 from the first savings account in the wife's name as a marital asset compensates plaintiff for his payment of taxes on the interest earned on the accu-

interest payments and the deposit of defendant's unemployment checks. However, the trial jduge determined that $5,000 funded by the inheritance from defendant's mother should be considered a marital asset. The second was $28,834 in a savings account in the wife's name containing insurance proceeds paid to defendant upon Martha's death. The third was $22,000 representing defendant's interest in the home in Warren which defendant owned jointly with her daughter. Testimony disclosed that defendant contributed at least $7,000 to the purchase of the home.

mulated savings. At best, the husband's contributions to the savings accounts in his wife's name were indirect and minor in nature. Therefore, we find no error in the trial court's exclusion of said accounts from the marital estate.

Plaintiff also contends that the trial court erred by including his retirement benefits in his employment with the Troy school system as part of the marital estate. In *Public School Employees' Retirement Board v Wexford Circuit Judge,* 39 Mich App 568; 197 NW2d 854 (1972), this Court held that MCL 38.225; MSA 15.893(25) prohibits school retirement benefits from being subject to process in divorce proceedings. Plaintiff is correct in his statement of the law but errs in concluding that the trial court treated such benefits as part of the marital estate. The truth is, that while the school retirement benefit of a cash value of $5,000 was mentioned in the judgment of divorce, it was treated as plaintiff's separate estate and was not made a part of the marital estate.[3] Therefore, as to this item, we find no error.

After eliminating defendant's separate assets and the cash value of plaintiff's school retirement benefits from the parties' combined holdings, the couple's marital estate totaled $197,395, composed of the following:

1. $ 73,125 in joint savings accounts.
2. $ 43,270 value of marital home, no incumbrances.
3. $ 23,000 two annuities in the plaintiff's name.
4. $ 10,000 value of South Dakota property owned by the parties.

---

[3] In the concluding paragraph of his written opinion dividing the marital assets, the trial court stated: "I have specifically not taken into account any interest Mr. Grotelueschen may have in the retirement benefits afforded by the State Retirement fund to employees of the Troy Board of Education."

5. $  5,000 value of property in Troy, of which plaintiff is the co-owner with Carol Watson, and as to which he contributed $5,000 of a purchase price of $71,000.
6. $ 38,000 estimated army pension fund benefits.
7. $  5,000 from the savings account mentioned in fn 2.

   $197,395 total marital assets.

The trial court divided the marital estate as follows:

| To Defendant—47.8% | To Plaintiff—52.2% | |
|---|---|---|
| $50,125 of joint savings. | $ 23,000 | joint savings |
| $43,270 marital home. | $ 23,000 | annuities in plaintiff's name. |
| $93,395 total to wife. | $ 10,000 | South Dakota property. |
| | $  5,000 | invested in Troy property. |
| | $ 38,000 | army pension benefits. |
| | $  5,000 | from savings account, fn 2. |
| | $104,000 | total to husband. |

Plaintiff attacks the division of the marital estate on two basic grounds: (1) although acknowledging that plaintiff received $104,000 of the marital assets, the award constitutes only 39% of the total assets of the parties, and (2) the award impermissibly treats plaintiff's interest in the army pension as a marital asset. We quickly reject plaintiff's first claim. Since the trial court was justified, in fact was compelled, under existing case law to weed out the separate assets of the parties, it matters not if the division of the *entire* holdings appears proportionately one-sided. What is important is the division of the *marital estate.*

However, plaintiff's claim that the trial court erred in treating his army pension as a marital asset poses a more substantive problem. It is true that under *Chisnell v Chisnell,* 82 Mich App 699; 267 NW2d 155 (1978), *lv den* 403 Mich 844 (1978), *cert den* 442 US 940; 99 S Ct 2881; 61 L Ed 2d 310 (1979), *reh den* 444 US 887; 100 S Ct 187; 62 L Ed

2d 121 (1979), plaintiff's military retirement pay is clearly a marital asset, divisible upon divorce. However, the Court's holding in *Chisnell* conflicts with the recent United States Supreme Court decision in *McCarty v McCarty, — US —; 101 S Ct 2728; 69 L Ed 2d 589 (1981). There, the question presented to the Supreme Court was whether, upon dissolution of a marriage, federal law precludes a state from dividing military nondisability retirement pay pursuant to the state's community property laws. A California state court had awarded the spouse of a retired military officer a specified portion of his interest in a military pension upon retirement. Subsequently, the officer retired, and began receiving retirement pay, of which his former spouse was entitled to receive 45% under the decree of divorce. The officer appealed to the California Court of Appeals which affirmed the award and the California Supreme Court denied the officer's petition for rehearing. On appeal, the United States Supreme Court reversed, holding:*

"Third, and finally, it is clear that Congress intended that military retired pay 'actually reach the beneficiary.' See *Hisquierdo [v Hisquierdo,* 439 US 572, 584; 99 S Ct 802; 59 L Ed 2d 1 (1979)]. Retired pay cannot be attached to satisfy a property settlement incident to the dissolution of a marriage." *McCarty, supra, — US —;* 101 S Ct 2739; 69 L Ed 2d 603 (1981).

Further, the Supreme Court stated that the injunction against attachment is not to be circumvented by an offsetting award. *Id.,* fn 22.

The only meaningful difference between *McCarty* and *Chisnell* is that *McCarty* involved a community property jurisdiction. Recently, the Maryland Court of Appeals had occasion to deter-

mine whether the Supreme Court's ruling in *Mc-Carty* applies equally to the distribution of military pensions in a state not having a community property law. In an opinion referring to post *Mc-Carty* decisions in other states, the Maryland Court held that it did, saying:

> "We recognize that the analysis in *McCarty* was premised on a division of property in a community property state, not an 'equitable distribution' state such as Maryland.[4] In our view, the rationale in *McCarty* is equally applicable to a division of property in an equitable distribution state and its holding is dispositive of the common question presented in *Hill* and *Rauth.* We now hold that, under the Supremacy Clause, upon the dissolution of a marriage, federal law precludes a Maryland court from dividing military nondisability retired pay as marital property pursuant to § 3-6A-05.

---

[4] "We note that subsequent to its decision in *McCarty,* the Supreme Court denied certiorari in *Russell v Russell,* 605 SW2d 33 (Ky, 1980), *cert den* — US —; 101 S Ct 3158; 69 L Ed 2d 1004 (1981), and *Cose v Cose,* 592 P2d 1230 (Alas, 1979), *cert den* — US —; 101 S Ct 3158; 69 L Ed 2d 1004 (1981). Both of these cases involved a division of property in 'equitable distribution' states. See Ky Rev Stat § 403.190 (1970) and Alas Stat § 09.55.210 (1973). In each it was held that military nondisability retired pay was not divisible.

"In addition, the Supreme Court vacated the judgment of the Supreme Court of Montana in *In re Marriage of Miller,* 609 P2d 1186 (Mont, 1980), *vacated and remanded Miller v Miller,* — US —; 101 S Ct 3152; 69 L Ed 2d 1000 (1981), in which it was held in an 'equitable distribution' state that military nondisability retired pay was divisible.· See Mont Rev Codes Ann § 48-321 (1977). The case was remanded 'for further consideration in light of *McCarty v McCarty,*' — US —; 101 S Ct 3152."

---

*Hill v Hill,* — Md —, —; 436 A2d 67, 69-70 (1981).

We agree with the Maryland Court of Appeals and the decisions from other states cited therein that *McCarty* overrules this Court's decision in *Chisnell.* While we do not necessarily agree, we must nonetheless follow decisions of the United States Supreme Court. Accordingly, we find that the

trial court erred in treating plaintiff's army pension benefits as part of the marital assets. In deference to the respected trial court, we point out that *Chisnell* was decided in April 1978, judgment was entered in the instant case in October 1980, and *McCarty* was decided on June 26, 1981. Thus, the *McCarty* ruling was not in existence when the trial court entered judgment.

Although the trial court erred in considering plaintiff's army pension a marital asset, we do not agree that the. error requires reversal. Had the trial judge awarded the wife a part of the pension, as did the trial court in *McCarty,* we would find error. However, in the instant case the trial court awarded the entire pension to the plaintiff. The trial court did exactly what the United States Supreme Court prescribed in *McCarty.* The trial court's error was in not including plaintiff's military pension as part of the husband's separate estate.

It is true that, when plaintiff's military pension benefits are excluded from the marital estate, the marital estate is reduced from $197,395 to $159,-395. Of this, the wife's share remains $93,395 and the husband's share becomes $66,000. Expressed in percentages, the wife's share of the marital estate increases from 47.8% to 62.4% and the husband's share of the marital estate declines from 52.2% to 37.6%.

The flaw in plaintiff's claim is the conclusion that when the marital estate is reduced by excluding the military pension rights, plaintiff somehow is still entitled to 52.2% of the marital assets. To award plaintiff 52% or anything approaching that figure of the marital estate, as adjusted, would award the party at fault the greater share. The trial court found that Mr. Grotelueschen was the

moving party in the divorce, that he never sought counseling to resolve his wife's doubts about his drinking, and that the divorce occurred "as a result of the choice of Mr. Grotelueschen without any real efforts on his part to attempt to preserve this relationship".

We further note that any increase in plaintiff's share of the marital estate would of necessity need to be made by increasing the amount awarded plaintiff from the joint savings account of $73,125. This in turn would reduce the share awarded the wife and in turn would reduce the income therefrom. As a consequence, an upward adjustment in the alimony awarded the wife might be required.

Likewise, we decline to set aside the award of alimony of $200 a month for 7 years. Defendant does not have retirement rights and works but part time. Though she will receive earnings on the separate inheritance and the $50,000 awarded her from the joint bank account, additional sums for her support for the seven-year period of adjustment do not appear out of line.

The long standing rule in this jurisdiction is that the division of marital assets and the award of alimony is a matter within the trial court's discretion. While this Court hears appeals on property division and alimony matters *de novo,* it generally will not reverse a trial judge's decision on such matters unless it is convinced, sitting in the lower court's position, it would have reached a different result. *Paul v Paul,* 362 Mich 43, 47; 106 NW2d 384 (1960), *McLain v McLain,* 108 Mich App 166, 168-169; 310 NW2d 316 (1981). After carefully reviewing the record and briefs, and after considering plaintiff's military pension as plaintiff's separate property as required by *McCarty, supra,* we are not convinced we would have reached a different result.

The remaining claims raised by the parties are without merit.

Affirmed. No costs, neither party having prevailed in full.