# STATE OF MICHIGAN

# COURT OF APPEALS

---

MARY LEE FISHMAN-PIKU, a legally
incapacitated person now deceased, by
KATHLEEN BETH MURAWSKI, personal
representative,[1]

      Plaintiff-Appellee,

v

STEPHEN PIKU, JR.,

      Defendant-Appellant.

UNPUBLISHED
March 23, 2017

No. 328023
Oakland Circuit Court
LC No. 2013-810085-DO

---

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right the judgment of separate maintenance. We vacate the attorney fee award and remand for further consideration of that issue, but affirm in all other respects.

Defendant first argues that the trial court erred in denying his motion for summary disposition of plaintiff's action seeking a judgment for separate maintenance that was filed on plaintiff's behalf by her guardian and conservator, Kathleen Beth Murawski. We disagree.

"We review de novo motions for summary disposition brought under MCR 2.116(C)(10)." *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012).

> A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. The moving party must specifically identify the matters that have no disputed factual issues, and it has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The party opposing the motion then has the burden of showing by evidentiary materials that a genuine issue of disputed material fact exists. The existence of a disputed fact must be established by substantively

---

[1] Fishman-Piku passed away while this case was pending on appeal.

admissible evidence, although the evidence need not be in admissible form. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. [*Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440-441; 814 NW2d 670 (2012) (citations omitted).]

The evidence submitted by the parties is to be considered in the light most favorable to the plaintiff because a motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). This Court considers only evidence that was properly presented to the trial court before it decided the motion. *Pena v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003).[2]

With regard to defendant's argument that Kathleen lacked authority as plaintiff's guardian and conservator to file this action on her behalf, we note that MCR 2.116(C)(5) provides for summary disposition where "[t]he party asserting the claim lacks the legal capacity to sue." Although neither defendant nor the trial court cited MCR 2.116(C)(5), it is well settled that this Court will review a trial court's summary disposition decision under the correct subrule. *Spiek v Dep't of Transp*, 456 Mich 331, 338 n 9; 572 NW2d 201 (1998). And a trial court is not constrained by the subrule under which the motion is filed. See *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 312; 696 NW2d 49 (2005). "Also, it is axiomatic that this Court will not reverse a trial court's decision if the correct result is reached for the wrong reason." *Id*. at 313.

"[T]he interpretation and application of the court rules, like the interpretation of statutes, is a question of law that is reviewed de novo on appeal." *Shawl v Spence Bros, Inc*, 280 Mich App 213, 218; 760 NW2d 674 (2008) (quotation marks and citation omitted). "Court rules are subject to the same rules of construction as statutes." *In re Leete Estate*, 290 Mich App 647, 655; 803 NW2d 889 (2010). Plain and unambiguous language in a statute or court rule must be applied as written. *Id*. at 655-656. Constitutional issues are reviewed de novo. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014).

The grounds for seeking a judgment for separate maintenance are identical to the grounds required to obtain a divorce. MCL 552.6(1) states:

A complaint for divorce may be filed in the circuit court upon the allegation that there has been a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved. In the complaint the plaintiff shall make no other explanation of the grounds for divorce than by the use of the statutory language.

---

[2] In addressing this issue in their appellate briefs, the parties improperly discuss evidence admitted at trial. Our analysis will be confined to the evidence that was presented to the trial court before it decided the motion for summary disposition, as required by case law.

MCL 552.7 provides:

> (1) An action for separate maintenance may be filed in the circuit court in the same manner and on the same grounds as an action for divorce. In the complaint the plaintiff shall make no other explanation of the grounds for separate maintenance than by use of the statutory language.

> (2) The defendant, by answer, may either admit the grounds for separate maintenance alleged or deny them without further explanation. An admission by the defendant of the grounds for separate maintenance may be considered by the court but is not binding on the court's determination. The defendant may also file a counterclaim for divorce.

> (3) If the defendant files a counterclaim for divorce, the allegation contained in the plaintiff's complaint as to the grounds for separate maintenance may be considered by the court but is not binding on the court's determination.

> (4) If evidence is presented in open court that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved, the court shall enter:

> (a) A judgment of separate maintenance if a counterclaim for divorce has not been filed.

> (b) A judgment dissolving the bonds of matrimony if a counterclaim for divorce has been filed.

On appeal, defendant argues that Kathleen lacked authority as plaintiff's guardian and conservator to file this separate maintenance action on behalf of plaintiff. Defendant waived this argument in the trial court. "[A] waiver is a voluntary and intentional abandonment of a known right." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *The Cadle Co v City of Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009). See also *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) ("Respondent may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit respondent to harbor error as an appellate parachute.") In his motion for summary disposition, defendant did not challenge Kathleen's authority to file this separate maintenance action, instead arguing only that Kathleen could produce no evidence to support a finding that the statutory requirements for a separate maintenance action were satisfied. In fact, at the hearing on the motion for summary disposition, defense counsel *conceded* that Kathleen could bring this action:

> *They can bring an action. They can bring – the guardian has the right to bring an action.* That doesn't suspend the rules of evi – the statute says that un – that the divorce has to be based on evidence presented in court. It – *the fact that the guardian can bring an action* doesn't mean that the rules of evidence are suspended, and they don't have to have some evidence. And it has to be

admissible evidence. And that was – that – *the fact that the statute allows a guardian to bring the action* does not mean that the guardian can bring in hearsay, or – [Emphasis added.]

Because defendant conceded at the hearing on the motion for summary disposition that Kathleen possessed authority to bring this action, defendant waived the argument that Kathleen lacked such authority. Defendant is thus barred from seeking appellate review on this aspect of the issue because his waiver eliminated any error. *The Cadle Co*, 285 Mich App at 255.

But even if this argument was not waived, it would lack merit. In *Smith v Smith*, 125 Mich App 164, 166; 335 NW2d 657 (1983), this Court held under earlier court rules that "a mentally incompetent spouse can sue for divorce by and through her guardian." In *Houghton v Keller*, 256 Mich App 336, 337-338; 662 NW2d 854 (2003), this Court reached the same conclusion under our current court rules, holding that "a guardian can bring an action for divorce on behalf of an incompetent spouse." In *In re Burnett Estate*, 300 Mich App 489, 494-497; 834 NW2d 93 (2013), this Court reaffirmed the holding in *Houghton*, explaining that "the current court rules specifically allow a guardian or conservator to bring an action for divorce on behalf of a mentally incompetent spouse." *Id*. at 495. In short, it is clear that a conservator may file a separate maintenance action on behalf of an incompetent person. Therefore, Kathleen, who is plaintiff's guardian and conservator, had authority to bring this action on her behalf.[3]

Defendant next challenges whether plaintiff presented admissible evidence establishing a genuine issue of material fact regarding the statutory grounds for separate maintenance. We conclude that plaintiff established a genuine issue of material fact.

As explained above, the grounds for seeking a judgment for separate maintenance are identical to the grounds for a divorce. MCL 552.7(1). The plaintiff must present evidence "that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved[.]" MCL 552.7(4). "If either party in a marriage relationship is unwilling to live together, then the objects of matrimony have been destroyed." *Grotelueschen v Grotelueschen*, 113 Mich App 395, 398-399; 318 NW2d 227 (1982), superseded on other grounds by 10 USC 1408(c)(1). A finding that the objects of matrimony have been destroyed may be supported by evidence that the parties' situation exceeded that of "normal marital bickering," *Winkelman v*

---

[3] Defendant's reliance on *Rodenhiser v Duenas*, 296 Mich App 268; 818 NW2d 465 (2012), is misplaced. In *Rodenhiser*, this Court noted that the Legislature had provided that a third-party next friend may file an action to annul a marriage in only one circumstance, i.e., when a party to the marriage is incapable of contracting at law. *Id*. at 282. This Court then reasoned that "[t]he Legislature's inclusion of only one ground on which a third party can bring suit to annul a marriage necessarily indicates that it did not intend that third parties could bring suit to annul a marriage on any and all of the grounds enumerated in the statute." *Id*. The analysis in *Rodenhiser* thus hinged on statutory provisions governing the annulment of marriages. That analysis has no bearing on an action for separate maintenance.

*Winkelman*, 20 Mich App 305, 306; 174 NW2d 46 (1969), and by evidence that one party was unwilling to cooperate in salvaging the marriage, *Grotelueschen*, 113 Mich App at 399.

As discussed above, a party moving for summary disposition under MCR 2.116(C)(10) "must specifically identify the matters that have no disputed factual issues, and it has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Bronson Methodist Hosp*, 295 Mich App at 440. In his motion for summary disposition, defendant argued that plaintiff had presented no admissible evidence establishing the statutory grounds for separate maintenance. The only evidentiary material appended to defendant's motion for summary disposition was defendant's own affidavit, which stated in its entirety:

1. I have personal knowledge of the matters which are represented therein, am over 21 years in age and am competent to testify as a witness.

2. I have read the Brief in Support of the Motion for Summary Disposition.

3. Each of the factual statements made in the brief are true and accurate.

4. There has not been a breakdown of my marriage to Mary Lee Piku.

5. The objects of matrimony in my marriage to Mary Lee Piku have not been lost or destroyed.

6. The marriage between myself and Mary Lee can be preserved.

Defendant's brief also quoted from voicemails purportedly left by plaintiff for defendant from her assisted care facility in late 2012 and early 2013 in which plaintiff allegedly expressed her love for defendant. Although defendant's brief in support of his motion stated that the voicemails were transcribed and could be played for the court, neither the voicemails themselves nor the transcripts were appended to the motion or supporting brief. Defendant contended that there was no admissible evidence that he was violent to plaintiff. Defendant claimed that any admissible evidence suggested that it was plaintiff who had violent outbursts and that this was not uncommon for dementia patients.

In her responsive brief to defendant's motion, plaintiff argued that the purported voicemails had not been shared with her counsel, that it was not clear that plaintiff was speaking to defendant in the voicemails, and that it was unclear whether she was lucid when allegedly leaving the voicemails. Plaintiff also referenced her statements to police and to her guardian ad litem, Cathy Greenberg, regarding defendant's abuse. Plaintiff told Greenberg that she wanted to be separated from defendant. These incidents led Kathleen to file the separate maintenance action on plaintiff's behalf. Plaintiff asserted that merely reciting the statutory grounds in open court would suffice to warrant entry of a judgment of separate maintenance. The complaint cited the statutory grounds and was signed under oath by Kathleen on behalf of plaintiff. Kathleen was prepared to appear in court to make the appropriate statutory allegations on the record. Plaintiff accused defendant of delaying the proceedings to dissipate the marital estate and thereby deprive plaintiff of assets needed to support her. Plaintiff appended to her responsive

brief: (1) a photograph depicting plaintiff's bruised face after having allegedly been abused by defendant; (2) police reports concerning the alleged abuse in 2011 and 2012, which included multiple handwritten statements by plaintiff regarding the abuse and photographs of plaintiff's bruised body; and (3) a February 25, 2014 report by guardian ad litem Greenberg indicating plaintiff had stated that she feared defendant, that defendant had physically and mentally abused her throughout their marriage, that she no longer wanted to have a relationship with defendant, and that she wanted to be divorced from defendant. On a later date, but before the motion hearing, plaintiff filed Kathleen's affidavit averring that she agreed with plaintiff's response to defendant's motion for summary disposition and was prepared to testify "that there has been a breakdown in the marital relationship to the extent that the objectives of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved."

Plaintiff presented substantively admissible evidence to create a genuine issue of material fact regarding the statutory grounds for a judgment of separate maintenance. As the moving party, it was defendant's initial burden to identify the matters for which there were no disputed factual issues and to support his position by affidavits, depositions, admissions, or other documentary evidence. *Bronson Methodist Hosp*, 295 Mich App at 440. The only item appended to defendant's motion was his own affidavit asserting in a conclusory fashion that there was no breakdown of the marriage, that the objects of matrimony had not been lost or destroyed, and that the marriage could be preserved. To the extent that an affidavit making these conclusory allegations satisfied defendant's initial burden, plaintiff adequately met her burden of showing a genuine issue of disputed material fact through Kathleen's affidavit averring "that there has been a breakdown in the marital relationship to the extent that the objectives of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved." Although Kathleen was not personally a party to the marriage, she was acting on plaintiff's behalf as her guardian and conservator, and defendant cites no authority establishing that an incompetent spouse's guardian and conservator is unable to testify in support of the statutory grounds for separate maintenance.

Plaintiff also presented photographs depicting plaintiff's bruised face and body following the alleged abuse by defendant, police reports, and a guardian ad litem's report containing plaintiff's statements that she had been abused and no longer wished to have contact with defendant or to be married to him. Defendant suggests that plaintiff's statements were inadmissible hearsay. But the photographs of plaintiff's injuries consistent with the alleged abuse comprised independent evidence that the abusive acts occurred. See *People v Hendrickson*, 459 Mich 229, 231; 586 NW2d 906 (1998) (opinion by KELLY, J.) ("photographs of [a] victim depicting injuries consistent with the allegations of assault provide independent evidence that the assault occurred.").

Further, plaintiff's hearsay statements to Greenberg were admissible. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible except as provided by the rules of evidence. MRE 802. Plaintiff is properly deemed unavailable given her diagnosis of dementia. See MRE 804(a)(4) (a witness is

unavailable if she "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity"). Plaintiff's hearsay statements qualify for admission under MRE 804(b)(7),[4] which provides for admission of

> [a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. . . .

Plaintiff's hearsay statements to Greenberg that plaintiff was abused by defendant and did not wish to have contact with him or remain married to him comprised evidence of a material fact that was more probative than any other evidence that could be procured through reasonable efforts. There were circumstantial guarantees of trustworthiness. Greenberg met with plaintiff on many occasions as her guardian ad litem, during which they discussed plaintiff's feelings for defendant and the pending action. Although plaintiff suffered from dementia, she was clear and concise to Greenberg about her feelings regarding defendant, frequently saying that she feared him, that he had physically and mentally abused her, and that she no longer wished to have a relationship with him or to be married to him. On many occasions, plaintiff made Greenberg promise not to let defendant know where plaintiff was staying and said that she felt safe at her assisted living facility because there was security for her protection. Given the relevance of plaintiff's statements to the grounds for granting a judgment of separate maintenance, the purposes of the rules and the interests of justice are best served by admitting the statements.

In light of the substantively admissible evidence that defendant physically and mentally abused plaintiff and that plaintiff feared defendant and did not wish to remain married to him, there was evidence to support a finding that the objects of matrimony had been destroyed. See *Grotelueschen*, 113 Mich App at 398-399; *Winkelman*, 20 Mich App at 306. Accordingly, plaintiff presented a genuine issue of material fact regarding the statutory grounds for granting a judgment of separate maintenance.[5]

Next, defendant makes two cursory assertions: (1) he claims that the clear and convincing evidence standard applies when a guardian files an action for separate maintenance,[6]

---

[4] Indeed, the trial court ultimately admitted plaintiff's hearsay statements to Greenberg at trial under this very hearsay exception.

[5] Because we have not relied on defendant's no-contest plea to a criminal charge related to the abuse in concluding that plaintiff presented a genuine issue of material fact, it is unnecessary to address defendant's argument that the no-contest plea was inadmissible in this case.

[6] Defendant cites an Arizona decision holding that the clear and convincing evidence standard applies when a guardian seeks dissolution of a marriage on behalf of an incapacitated person. See *Ruvalcaba v Ruvalcaba*, 174 Ariz 436, 445; 850 P2d 674 (Ariz App, 1993). Defendant also

and (2) argues that he was denied due process and an appropriate hearing concerning the statutory elements because he was unable to confront plaintiff.[7] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) (citations omitted). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Id*. These arguments are deemed abandoned given defendant's cursory appellate presentation. In addition, defendant's due process argument is waived because it is not included in his statement of questions presented. See *River Investment Group, LLC v Casab*, 289 Mich App 353, 360; 797 NW2d 1 (2010).

In any event, defendant's arguments are unavailing. We have located no Michigan authority suggesting that the clear and convincing evidence standard applies to a separate maintenance action commenced by a guardian and conservator. And given the substantively admissible evidence discussed above, we can discern no basis to conclude that a clear and convincing evidence standard would require a different disposition of defendant's motion for summary disposition. Defendant's claim that he was deprived of a fair hearing on contested issues is belied by the fact that this action was ultimately litigated in a 13-day trial. Defendant cites no authority establishing that the inability to confront a mentally incompetent declarant in a civil case amounts to a due process violation, nor have we located any such authority.

Defendant next presents arguments related to the trial court's division of marital property. We find no merit in defendant's arguments. As explained in *Hodge v Parks*, 303 Mich App 552, 554-555; 844 NW2d 189 (2014):

> [T]his Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property. Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. Special deference is afforded to a trial court's factual findings that are based on witness credibility. This Court further reviews whether a trial court's dispositional rulings are fair and equitable in light of the trial court's findings of fact, but this Court will reverse only if definitely and firmly convinced that the division is inequitable. [Quotation marks and citations omitted.]

Before dividing marital property, a trial court should first consider whether an asset constitutes marital property or is instead a separate property of one of the parties. *Woodington v*

cites *In re Martin*, 450 Mich 204, 226-227, 233-234; 538 NW2d 399 (1995), which held that the clear and convincing evidence standard applies when assessing whether a conscious incompetent patient made statements while competent expressing a desire to refuse life-sustaining medical treatment.

[7] Defendant cites *Redding v Redding*, 214 Mich App 639, 645; 543 NW2d 75 (1995) (a party is entitled to a trial on contested issues), and *Hisaw v Hayes*, 133 Mich App 639, 644; 350 NW2d 302 (1984) ("Due process requires that a litigant be afforded a fair trial of the issues involved in the controversy and a determination of disputed questions of fact on the basis of evidence.").

*Shokoohi*, 288 Mich App 352, 358; 792 NW2d 63 (2010). Marital assets are subject to division between the parties, whereas separate assets usually may not be invaded. *Id*. "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). "[S]eparate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property." *Id*. (quotation marks and citation omitted). "Separate assets may be invaded if one party demonstrates additional need, or had significantly contributed to the acquisition or growth of the separate asset." *Woodington*, 288 Mich App at 364.

The objective of distributing marital assets "is to reach an equitable distribution of property in light of all the circumstances." *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003). "Although marital property need not be divided equally, it must be divided equitably in light of a court's evaluation of the parties' contributions, faults, and needs." *Richards v Richards*, 310 Mich App 683, 694; 874 NW2d 704 (2015).

> To reach an equitable division of marital property, a trial court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health and needs, fault or past misconduct, and any other equitable circumstance. The determination of relevant factors will vary with the circumstances of each case, and no one factor should be given undue weight. The trial court must make specific findings regarding the factors it determines to be relevant. [*Woodington*, 288 Mich App at 363-364 (citations omitted).]

The trial court must not place excessive weight on the factor of fault. *McDougal v McDougal*, 451 Mich 80, 89-90; 545 NW2d 357 (1996). "[F]ault is an element in the search for an *equitable* division – it is not a punitive basis for an inequitable division." *Id*. at 90.

Defendant presents a number of challenges to the trial court's division of property. First, he argues that the trial court failed to specify if any property other than plaintiff's Waterford home was marital property or a separate property of one of the parties. Defendant asserts that the trial court failed to address contribution or commingling with respect to the Waterford home, claiming that marital funds were used on that home. Defendant contends that the trial court also failed to specify that defendant's pension accounts comprised his separate premarital assets.

Defendant's arguments are without merit. The trial court's opinion and order made sufficiently clear which assets were deemed marital and which were considered separate property. The trial court explicitly noted that the Waterford home was plaintiff's separate premarital asset. The trial court also made clear that defendant's pensions were his separate assets by stating that defendant "shall retain *his* police pension, army pension, and State Department Pension." The trial court implicitly treated the parties' Florida property and their 10 weeks of timeshare properties as marital assets by dividing those assets equally between the parties. Each party was awarded one vehicle and a third vehicle was ordered to be sold with the proceeds to be split between the parties; it is clear in context that the court was treating the vehicles as marital property and divided the assets equally. Likewise, the trial court treated the parties' bank accounts as marital assets by splitting the funds in those accounts equally between

the parties after making adjustments for funds that defendant had failed to account for after withdrawing them.

The trial court did not clearly err in finding that plaintiff's Waterford home was her separate asset. Defendant claims that marital money was used to pay expenses on the home. Plaintiff purchased the home in 1993, before she married defendant in 1997, and the home was in her name only. The home was rented from 1999 to 2004, generating income. Defendant admitted that he did not know if rental income covered all of the expenses for the house during the period it was rented. He acknowledged that plaintiff handled the parties' finances. The mortgage was paid off in 2007. Plaintiff was employed for much of the time and contributed her earnings to the parties' joint account. We lack a definite and firm conviction that the trial court erred in treating the Waterford home as plaintiff's separate asset or in declining to find that defendant significantly contributed to the growth of that asset.

Defendant next argues that the trial court failed to equitably divide the property or to address all of the factors, and that the property division was punitive. Defendant contends that the trial court placed excessive weight on the element of fault with respect to defendant's abuse of plaintiff. We disagree. The trial court properly noted that the element of fault should not be given disproportionate weight and that the court's objective was to achieve equity rather than to punish one of the parties. The trial court addressed the factors it determined to be relevant in dividing the marital property. The court took note of plaintiff's substantial needs as a result of her diagnosis of moderate to severe dementia, which was pertinent to plaintiff's health, needs, earning ability, and station in life. The court discussed the testimony of plaintiff's doctor that she needed consistent supervisory care, including assistance with taking medications, preparing meals, bathing, and other daily functions. The court noted the doctor's testimony that the facility where plaintiff lives addresses her needs and can adjust its levels of care as her functionality diminishes. The court also addressed defendant's domestic abuse of plaintiff as a consideration that could not be ignored and noted that plaintiff was fearful of defendant. This was pertinent to the factor of fault and past misconduct. The court further discussed the disparity in the parties' incomes and expenses; whereas defendant has an income of approximately $10,000 a month and monthly expenses of approximately $6,000, plaintiff has an income of only $785 a month and monthly expenses of approximately $7,000. In short, the trial court took into account a wide range of factors and did not focus excessively on defendant's fault. There is no basis to conclude that the property division was punitive. As explained earlier, the trial court awarded defendant his separate assets comprised of his multiple pensions. The court required defendant to keep plaintiff as a surviving spouse on the pensions, which was a reasonable accommodation given plaintiff's deteriorating health and substantial needs, and this provision will have no effect if defendant outlives plaintiff. The parties were awarded one-half of the funds in their bank accounts, after adjustments related to defendant's removal of funds from accounts.[8] Defendant has not established that the property division was inequitable.

---

[8] In a footnote of his appellate brief, defendant challenges the trial court's award to plaintiff of the first $100,000 from one of the accounts. Defendant suggests that he did not do anything improper and that there was nothing missing from any of the accounts. But the award of this

Defendant challenges the award to plaintiff of the first $119,500 obtained from the cash surrender of a Security Benefit Annuity account in defendant's name; this amount was one-half of the missing $239,000 that defendant withdrew from an IRA account in 2011. This award to plaintiff was based on defendant's physical abuse of plaintiff and the fact that defendant failed to substantiate the location of the missing $239,000. The remaining funds in the account were split evenly. Defendant argues that the award was improper because the finding that he abused plaintiff was based on hearsay and was unsupported. But ample evidence at trial established that defendant abused plaintiff. Guardian ad litem Greenberg testified about her meetings with plaintiff in which plaintiff indicated that defendant had abused her and in which plaintiff consistently expressed her fear of defendant. Defendant fails to present an argument addressing the trial court's conclusion that this testimony was admissible under MRE 804(b)(7). Other witnesses, including family members and a neighbor, saw bruises on plaintiff's face and body on occasions shortly after she was allegedly abused by defendant.

Defendant also asserts that the award of the first $119,500 from this account constituted an improper sanctioning of defendant for what was done during the marriage. Defendant is apparently suggesting that his failure to account for the $239,000 withdrawn in 2011 should not have been considered in the property division. But the dissipation of marital assets arising from defendant's failure to substantiate the location of funds that he withdrew is a proper consideration. See *Woodington*, 288 Mich App at 368 ("[W]hen a party has dissipated marital assets without the fault of the other spouse, the value of the dissipated assets may be included in the marital estate.").

Defendant also presents a cursory challenge to the portion of the trial court's opinion and order and a provision of the judgment pertaining to the payment of costs for a receiver to sell the Florida property. In particular, the trial court provided that defendant could either buy plaintiff out of her share of that property by paying her $111,000, which was one-half of the net equity of the property, or sell the property and split the proceeds of the sale with plaintiff. If defendant chose to sell the property and the parties could not agree on the terms of sale within 30 days of the judgment, a receiver would be appointed. The trial court directed that the receiver would not only sell the property but also determine who shall pay the costs associated with the receiver's appointment. Defendant challenges this provision in a single sentence, stating: "To the extent the trial court requires the receiver to determine costs, the trial court has improperly appointed the receiver as a binding arbitrator in violation of the consent provisions of the Domestic Relations Arbitration Act, MCL 600.5071 (requiring a stipulation to binding arbitration – court cannot impose arbitration; MCL 600.5072 agreement in writing as to specific acknowledgements) [sic]." Defendant cites no authority and provides no reasoning to support the conclusion that a receiver's determination of who shall pay the costs associated with the appointment of the receiver by itself constitutes a type of binding arbitration subject to the strictures of MCL 600.5071 and MCL 600.5072(1). "An appellant may not merely announce his

money to plaintiff was in accordance with an April 8, 2014 order *to which the parties stipulated* so as to resolve a motion for contempt against defendant without a formal finding of contempt with respect to money that was missing from the marital estate. "A party cannot stipulate with regard to a matter and then argue on appeal that the resulting action was erroneous." *Hodge,* 303 Mich App at 556.

position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Peterson Novelties, Inc*, 259 Mich App at 14 (citations omitted). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Id*. Defendant's argument is deemed abandoned given his cursory one-sentence assertion and failure to cite any case law.

Defendant next presents arguments challenging the trial court's award of spousal support to plaintiff. "It is within the trial court's discretion to award spousal support, and we review a spousal support award for an abuse of discretion." *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Woodington*, 288 Mich App at 355.

> We review for clear error the trial court's factual findings regarding spousal support. A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made. If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case. We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable. [*Loutts*, 298 Mich App at 26 (citations omitted).]

"The objective in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008).

> Among the factors that should be considered are: (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003). "Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without overelaboration of detail or particularization of facts." MCR 2.517(A)(2).

Defendant asserts that the trial court failed to make findings under the spousal support factors. He again asserts that the trial court improperly made findings of fault on the part of defendant that were unsupportable. However, the trial court made findings on the relevant factors and its finding that defendant abused plaintiff was supported by the evidence for the reasons discussed earlier. The trial court explicitly recognized that, as part of the past relations

and conduct of the parties, the concept of fault comprised only one factor that should not be assigned disproportionate weight. The court again later emphasized that defendant's ongoing abusive behavior and plaintiff's resulting fear of him was just one of many factors that the court considered in deciding whether to award spousal support. The trial court also took into account "that both parties are retired senior citizens, the length of the parties' seventeen-year marriage, both parties' employment histories and earnings during the marriage, and [plaintiff's] diminishing mental health." The court noted the parties' disparate incomes, with defendant receiving an income of approximately $10,000 a month and plaintiff receiving a monthly income of $785 a month. The trial court also took into consideration plaintiff's needs for care and maintenance, which resulted in monthly expenses of approximately $7,000 a month. The trial court took into account defendant's monthly expenses, which he testified were approximately $6,000 a month. The trial court considered the property settlement award and general principles of fairness and equity. In light of these considerations, the trial court awarded plaintiff spousal support in the amount of $4,000 a month. We are not convinced that the spousal support award is inequitable. Given plaintiff's substantial needs due to her moderate to severe dementia diagnosis and the substantial disparity in the parties' incomes, the award of $4,000 is fair and equitable. The award still leaves plaintiff with a monthly deficit of more than $2,000, whereas defendant is left with enough of his income to fully cover what he claims are his monthly expenses.

Defendant challenges a provision of the judgment of separate maintenance providing that the monthly spousal support payments will come out of his pension benefits.[9] Defendant contends that it is inappropriate to use the pensions as the source of the spousal support payments because the pensions were awarded to him as his separate property and that this somehow skews the property division. Defendant's argument is unavailing. Defendant's pension benefits constitute income for the purpose of spousal support. See MCL 552.602(n)(*ii*) (defining "[i]ncome" to include "[a] payment due or to be due in the future to an individual from a profit-sharing plan, a pension plan, an insurance contract, an annuity, [or] social security . . . ."); see also *Ackerman v Ackerman*, 197 Mich App 300, 302-303; 495 NW2d 173 (1992) (proceeds from a disability insurance policy constituted "income" under MCL 552.602(c)(*ii*) for the purpose of spousal support even though the policy was purchased after the entry of the divorce judgment). The trial court did not err in requiring defendant to pay his spousal support obligation out of his income that was comprised of his pension benefits.

Finally, defendant presents arguments challenging the trial court's award of attorney fees to plaintiff in the amount of $25,000. "We review a trial court's ruling on a request for attorney fees for an abuse of discretion. An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Smith v Smith*, 278 Mich App 198, 207; 748 NW2d 258 (2008) (citation omitted). Any findings of fact on which the trial court

---

[9] In particular, the challenged provision of the judgment of separate maintenance provided that defendant will receive "One Hundred (100%) Percent of his police pension, army pension, State Department pension and Social Security benefits with the exception of the non-taxable spousal support amount as set forth in paragraph 2 above. . . ."

based its decision are reviewed for clear error. *Richards*, 310 Mich App at 700. Clear error is deemed to exist when this Court is definitely and firmly convinced that a mistake has been made. *Id*.

The award of attorney fees in domestic relations actions is governed by MCR 3.206(C), which provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that

> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

"MCR 3.206(C)(2) provides two independent bases for awarding attorney fees and expenses." *Richards*, 310 Mich App at 700. "Whereas MCR 3.206(C)(2)(a) allows payment of attorney fees based on one party's inability to pay and the other party's ability to do so, MCR 3.206(C)(2)(b) considers only a party's behavior, without reference to the ability to pay." *Id*. at 701.

In awarding attorney fees under MCR 3.206(C)(2), a trial court is not required to follow the detailed procedure set forth in *Smith v Khouri*, 481 Mich 519, 530-531; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.), for determining the reasonableness of a fee. *Riemer v Johnson*, 311 Mich App 632, 657; 876 NW2d 279 (2015). Nonetheless, a trial court must make findings "regarding the reasonableness of the fees incurred. The party requesting attorney fees bears the burden of proving they were incurred and that they are reasonable." *Reed v Reed*, 265 Mich App 131, 165-166; 693 NW2d 825 (2005) (citations omitted). The trial court also should "conduct a hearing to determine what services were actually rendered, and the reasonableness of those services." *Id*. at 166. Although *Khouri* is not binding in domestic relations cases, the factors listed in Michigan Rule of Professional Conduct (MRPC) 1.5(a) and *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982), are generally useful in determining the attorney fee award. See *Riemer*, 311 Mich App at 658-661.

In this case, Kathleen testified at trial that plaintiff has incurred $44,650 in attorney fees, of which plaintiff has already paid $27,116 and defendant has already contributed $7,358 pursuant to a court order. Kathleen asked that defendant be held responsible for a further portion of the attorney fees. Documentation of the attorney fees was admitted as an exhibit at trial by stipulation. Kathleen testified that if this case had gone more smoothly, it would have been unnecessary to incur that amount of attorney fees. In its written opinion and order issued after trial, the trial court took note of Kathleen's testimony regarding attorney fees and also noted that a bench warrant had recently been issued against defendant for his failure to appear at a motion hearing. The court further found that plaintiff was unable to bear the expenses of the action and

-14-

that defendant was responsible for a majority of the expenses plaintiff incurred due to defendant's repeated failures to comply with various court orders. Although the attorney fee portion of the trial court's order did not discuss the facts surrounding plaintiff's inability to bear the expenses of the action, the court did discuss the parties' expenses and the disparity in the parties' respective incomes earlier in the opinion. It is clear that plaintiff's expenses exceed her income, even with the spousal support award. Overall, the trial court's findings were sufficient to establish that plaintiff was unable to pay the expenses of the action and that defendant was able to pay, thereby satisfying the ground for awarding attorney fees set forth in MCR 3.206(C)(2)(a).[10]

However, the trial court failed to make the requisite findings concerning the reasonableness of the requested fees. Kathleen's testimony and the exhibit documenting the fees were sufficient to establish the *amount* of the fees incurred, but the trial court did not make any findings concerning the *reasonableness* of the fees. Given the failure to make the requisite findings on reasonableness, we vacate the attorney fee award and remand the case for further consideration of the fee request. If the evidence admitted at trial is insufficient to make the required findings on reasonableness, the trial court may conduct an evidentiary hearing on remand. See *Ewald v Ewald*, 292 Mich App 706, 726; 810 NW2d 396 (2011) (remanding the case so that the fee applicant could provide further evidence concerning the reasonableness of the fees and other matters); *Reed*, 265 Mich App at 166 (noting the trial court's obligation to conduct a hearing regarding the reasonableness of the fees incurred).

Plaintiff asks that this Court remand the case to the trial court to enter an award of reasonable appellate attorney fees. MCR 3.206(C)(1) allows a party to request attorney fees at any time. Accordingly, on remand plaintiff may also seek an award of appellate attorney fees. The trial court is in a better position than this Court to determine the reasonableness and necessity of such an award. See *Wiley v Wiley*, 214 Mich App 614, 616; 543 NW2d 64 (1995).

We vacate the attorney fee award and remand for further consideration of that issue. We affirm in all other respects. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh

---

[10] It was therefore unnecessary to also establish the independent ground for awarding attorney fees contained in MCR 3.206(C)(2)(b). We note that although the trial court found that defendant refused to comply with court orders, the court's opinion is bereft of specific factual findings establishing a causal relationship between the attorney fees awarded and defendant's refusal to comply with court orders. See MCR 3.206(C)(2)(b) (the attorney fees must have been incurred "because" the other party refused to comply with a court order); *Reed*, 265 Mich App at 166 (requiring the fees to have been incurred because of the other party's misconduct).