### OBÁDIAH ROSZEL v. ARVILLA ROSZEL.

#### *Marriage—Want of consent.*

Where one of the parties to an alleged marriage, instead of assenting to the contract, positively dissents from it, there can be no legal or valid marriage, although a ceremony is performed by the officiating minister or magistrate.

Appeal from Kent. ·(Montgomery, J.)    Argued October 26, 1888.   Decided November 28, 1888.

Bill to annul marriage.   Defendant appeals.   Decree reversed and bill dismissed.   The· facts are stated in the ·opinion.

*Godwin, Adsit & Dunham,* for complainants, contended:

1. Direct evidence of marriage is the testimony of a witness who was present and saw the marriage; citing 1 Bish. Mar. & Div. § 486.

.2. The fact of marriage may be proved by the clergyman, or other official person who solemnized it; but there is no legal necessity for calling such officiating persons, and any˙ one who was present may be a witness to such fact; citing 1 Bish. Mar. & Div.

§ 494; *State v. Williams,* 20 Iowa, 98; *Patterson v. Gaines,* 6 How. 550.

3. Proof of the official character of the acting justice was not necessary; citing 1 Bish. Mar. & Div. §§ 495, 496; *State v. Rood,* 12 Vt. 396; *Goshen v. Stonington,* 4 Conn. 209; *State v. Winkley,* 14 N. H. 480, 496.

4. Defendant is not a competent witness to prove that the marriage was not consummated; and there is no evidence to sustain the claim set up that the marriage was void because she said "no" when she should have said "yes," and did not sleep with him.

*C. C. Howell,* for defendant, contended:

1. A marriage procured by force or fraud is void from the beginning, the basis of the contract being consent; citing 2 Kent, Com. 77, 87; 1 Bish. Mar. & Div. §§ 12, 93, 94, 216, 219, 225, 245, 248; *Mountholly v. Andover,* 11 Vt. 226; *Kopke v. People,* 43 Mich. 45; *Scott v. Shufeldt,* 5 Paige, 43.

CHAMPLIN, J.   Complainant, being 68 years of age, and a widower, on January 12, 1884, married the defendant, who was then 60 years of age, and was known by the name of Arvilla Pratt.   The bill alleges that many years previously she had been married to one Calvin C. Pratt, but that she represented to complainant that she was free from him, and had a lawful right to marry. These parties lived together very agreeably for a time, but soon disputes and difficulties arose between them, resulting in complainant's filing his bill praying for the annulment of the marriage contract, on the ground that defendant was not legally divorced from Pratt, and had not the right to enter into the marriage contract, and that Pratt was still living.   The defendant answered, denying that Pratt was ever lawfully married to her, for the reason that at the time he had a wife, to whom he was legally married, living, and that she was still living. After some proofs had been taken, the complainant, by leave of the court, amended his bill, charging on information and belief that in about the year 1841 defendant.

was also married to one Christian Zenniger, in the township of Bedford, Cuyahoga county, in the state of Ohio, and afterwards lived and cohabited with him as his wife, and that he believes the marriage is still in force.

Aside from some proofs taken by a commissioner in the state of Ohio, the proofs appear to have been taken in open court before the circuit judge, as in a case at law, and both parties were sworn without an order for that purpose, and without objection. It developed from the proofs that Pratt was still alive, but that at the time of his marriage with defendant he was lawfully married to one Jane C. Pratt, and that she was still alive, and the marriage relation between them had never been severed.

The right of the complainant to the relief asked for hinges upon the legality of the marriage of defendant with Christian Zenniger. This marriage is alleged to have occurred in 1841. Defendant was then a girl of 18 years of age. Zenniger was a farm laborer. There is no written evidence introduced of the marriage, but the complainant relies upon the testimony of a Mrs. Willey, who is a sister of defendant, who testifies that she was present, and saw Zenniger and defendant married by Esquire Allen, a justice of the peace, who resided in the neighborhood. Complainant also introduced in evidence the testimony of two of his daughters to an admission of defendant that she was married to Zenniger.

The defendant claims that there was a marriage ceremony performed by Esquire Allen, but she denies that she was ever married to Zenniger, for the reason that she never assented to such marriage. She testifies that her parents attempted to force her into a marriage to Zenniger when she was but 18 years of age; that she told the justice that if he tied the knot 40 times it would not

stay tied, for she did not like him, and should not live with him; that they made her stand up,—

"And, when the man asked me if I would take him to be my husband, I said, 'No, I wont;' and on every question he asked me that I ought to have answered, 'Yes,' I said, 'No,' plain, and the next day I ran away."

She testified that she had never slept with Zenniger, or lived with him as his wife; that the night of the marriage she slept with her sister, and fastened herself in the room, and excluded Zenniger, and in this she is corroborated by Mrs. Wiley; that the next morning early she ran away to Warrensville, where she staid until her father brought her back, when a further attempt was made to compel her to live with Zenniger by removing some things into an old log house; that she consented to go into the log house on condition that one of her younger sisters would go with her; that she went there with her sister on Friday afternoon, and that night she sat up all night, and also on Saturday night; that on Saturday night Zenniger told her he had wronged her, and asked for forgiveness, and said:

"That it was her mother's doings; that she told him if he could get me fast it was all right;" that he left that night, and she never saw him afterwards. Eight or nine years after he left, she heard that Zenniger was married to another woman. She testifies positively that she never consented to marry Zenniger.

The testimony of complainant's daughters relative to her admissions, fully corroborates the testimony of defendant that she never consented to the marriage of herself to Zenniger. No evidence of any license for such marriage can be found in the proper office, and no return appears ever to have been made of such marriage by Esquire Allen.

It is laid down by Mr. Bishop, in his work upon Marriage and Divorce, that—

"The ruling principle as to the constitution of marriage is that it is a mutual contract,—a consensual contract,—to the formation of which the consent of both parties must be really, deliberately, definitely, and irrevocably given."

Intention is the essential ingredient, as in every other contract; and when, as the proofs show in this case, one of the parties, instead of assenting to the contract, positively dissents from it, there can be no legal or valid marriage, although a ceremony is gone through with by the officiating minister or magistrate.

"When all the facts are covered by direct proofs, and there is no room to presume others, they will be held to constitute marriage only when they disclose a concurring consent to it by the two minds at the same instant." Bish. Mar. & Div. § 248.

Here, under the proofs, it cannot be claimed that defendant employed words of consent which Zenniger may have relied upon to also give his concurrence; for the testimony is that she did not consent, and, when asked if she consented to take Zenniger for her husband, said "No." She is not, therefore, estopped, either by words or conduct, from asserting that she never consented to the marriage, and her conduct immediately after and since has been consistent with her claim of non-assent.

A short time after this alleged marriage with Zenniger she was married to Henry Myers, a young man who resided in the neighborhood, and who was fully aware of the Zenniger affair, with whom she lived a number of years, and had three children. Myers afterwards petitioned for a divorce on the ground of gross neglect of duty towards Myers for three years prior to the filing of the petition, and a divorce for this cause was granted

him on December 15, 1856.   Afterwards, and before the marriage between the parties to this suit, Myers died.

We do not think the proof makes out a legal marriage between the defendant and Pratt, or between the defendant and Zenniger; and as these were the only grounds relied on for relief, we think the decree of the circuit court should be reversed, and the bill of complaint dismissed, with costs of both courts, but without prejudice. An allowance of $75 over taxable costs will be made to defendant for solicitor's services in defending the suit.

The other Justices concurred.