*In re* BURNETT ESTATE

Docket No. 309640. Submitted March 5, 2013, at Lansing. Decided April
16, 2013, at 9:05 a.m.

Beryl Ellen Niles and Joseph Buxbaum brought a divorce action in
the Washtenaw Circuit Court, Family Division, as guardians on
behalf of their mother, Devon P. Burnett, who was 79 years old and
suffering from dementia. Defendant, Bobbie E. Burnett, moved for
summary disposition, arguing that guardians and conservators
lack the authority to file a complaint for divorce on behalf of an
incapacitated ward. After the court, Darlene A. O'Brien, J., denied
the motion, defendant filed a second motion for summary disposi-
tion, arguing that because Michigan law only recognizes marriage
as a union between one man and one woman, the court did not
have jurisdiction to grant a divorce given that defendant, who was
born a man, had undergone gender reassignment surgery after the
parties were married. Defendant further argued that granting a
divorce would be an implicit recognition of marriage between
individuals of the same gender, which the Michigan Constitution
prohibits. The court denied defendant's motion, concluding that
because the marriage contract was valid when the parties entered
into it, the court had the ability to dissolve it. The court entered a
final judgment of divorce, and defendant appealed.

The Court of Appeals *held*:

1. A guardian or conservator may file a complaint for divorce
on behalf of the spouse over whom the guardianship or conserva-
torship is placed under *Houghton v Keller*, 256 Mich App 336
(2003), which was controlling in this case.

2. The circuit court had jurisdiction to enter a divorce judg-
ment after defendant had undergone gender reassignment surgery
because the parties' marriage contract was valid and enforceable
under Michigan law at the time it was entered. The court's
decision to grant the parties a divorce did not violate the consti-
tutional prohibition on recognizing any agreement other than the
union of one man and one woman in marriage as a marriage or
similar union. Further, defendant's gender-reassignment surgery
did not dissolve the parties' marriage because, once a marriage is
validly entered into, one spouse's actions cannot unilaterally

result in its legal dissolution without court involvement. Defendant's situation did not fall within the narrow circumstances under which a marriage can be annulled under Michigan law.

Affirmed.

1. DIVORCE — GUARDIAN AND WARD — CAPACITY TO SUE.

A guardian or conservator may file a complaint for divorce on behalf of the spouse over whom the guardianship or conservatorship is placed (MCR 2.201[E], MCR 3.202[A]).

2. DIVORCE — JURISDICTION — SAME-SEX MARRIAGE — GENDER-REASSIGNMENT SURGERY.

A circuit court has jurisdiction to enter a divorce judgment for a marriage in which one of the spouses has undergone gender-reassignment surgery if the underlying marriage contract was valid and enforceable when it was entered.

3. DIVORCE — CONSTITUTIONAL LAW — SAME-SEX MARRIAGE — GENDER-REASSIGNMENT SURGERY.

A court's decision to enter a divorce judgment for a marriage in which one of the spouses has undergone gender-reassignment surgery does not violate the constitutional prohibition on recognizing any agreement other than the union of one man and one woman in marriage as a marriage or similar union (Const 1963, art 1, § 25).

*Martin E. Blank* and *Anne Argiroff* for plaintiff.

*Raymond G. Mullins* for defendant.

Before: MURRAY, P.J., and MARKEY and WHITBECK, JJ.

MURRAY, P.J.

## I. INTRODUCTION

The United States Constitution created a federal government of limited, enumerated powers, and reserved[1] to the states all powers not specifically granted

---

[1] Because the states held all the power prior to creation of the Constitution, and it was the states that consented to the establish-

to the federal government. See US Const, art I, § 8; US Const, Am X. As eloquently stated by the principal architect of the Constitution when arguing for its ratification by the states, "[t]he powers reserved to the several States will extend to all the objects which, in the ordinary course of affairs; concern the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State." The Federalist No. 45, p 311 (James Madison).

In the exercise of its reserved powers, Michigan has always regulated the marriage relationship.[2] This case involves both the definition of marriage established by the people through a direct vote as set forth in our state constitution (Const 1963, art 1, § 25), as well as by the people's representatives as contained in statute (MCL 551.1). These laws (and others) prohibit recognition of a contract of marriage entered into by two individuals of the same sex. Here, defendant—who had a sex-change operation subsequent to the parties'

---

ment of a federal government for certain limited purposes, the states *retained,* as opposed to being *granted,* all powers not expressly given to the federal government. See *Chisholm v Georgia,* 2 US (2 Dall) 419, 435; 1 L Ed 440 (1793) ("Every state in the Union, in every instance where its sovereignty has not been delegated to the United States, I consider to be as completely sovereign, as the United States are in respect to the powers surrendered. The United States are sovereign as to all the powers of government actually surrendered: each state in the Union is sovereign, as to all the powers reserved. It must necessarily be so, because the United States have no claim to any authority but such as the states have surrendered to them[.]") and *United States v Lopez,* 514 US 549, 584; 115 S Ct 1624; 131 L Ed 2d 626 (1995) (Thomas, J., concurring).

[2] The marriage relationship, there can be no doubt, has always been exclusively within the power of the states to define and regulate. See *Andrews v Andrews,* 188 US 14, 32; 23 S Ct 237; 47 L Ed 366 (1903), abrogated on other grounds *Sherrer v Sherrer,* 334 US 343, 353; 68 S Ct 1087; 92 L Ed 1429 (1948); *Trustees of Dartmouth College v Woodward,* 17 US (4 Wheat) 518, 600-601; 4 L Ed 629 (1819).

marriage—argues that under these provisions a Michigan court had no jurisdiction to grant a divorce to the plaintiff because defendant is also now a female. For the reasons that follow, we hold that the circuit court had jurisdiction to enter the divorce judgment, and we therefore affirm.

## II. FACTS AND PROCEEDINGS

Plaintiff and defendant were married in Ann Arbor, Michigan on August 30, 1984. In the late 1980s, plaintiff and defendant moved to Philadelphia, Pennsylvania, where they lived together until September 2005. During that month defendant drove plaintiff to Michigan for an extended visit with her daughter, Beryl Ellen Niles. Plaintiff never returned to Philadelphia, and never lived again with defendant.

The underlying divorce action was initiated by plaintiff's children, Niles and her brother Joseph Buxbaum, who also served as plaintiff's guardians.[3] Plaintiff was 79 years old and suffering from dementia when the complaint was filed on her behalf. Defendant responded to the complaint and filed a motion for summary disposition, arguing that guardians and conservators lack authority to file a complaint for divorce on behalf of an incapacitated ward. The trial court denied defendant's motion from the bench, concluding that under Michigan caselaw guardians and conservators have authority to file a complaint for divorce.

Defendant subsequently filed a second motion for summary disposition, this time arguing that the trial court did not have jurisdiction to grant a divorce. The basis for defendant's argument was that defendant, who was born a man, underwent gender reassign-

---

[3] Niles was also appointed plaintiff's conservator.

ment surgery to become a woman in November 2003. As a result, defendant argued, the parties were no longer married because Michigan law only recognized marriage as the union between one man and one woman. And, defendant argued, because the parties were not married the trial court had no jurisdiction to grant a divorce. Defendant further argued that granting a divorce would be an implicit recognition of marriage between individuals of the same gender, which is prohibited under the Michigan Constitution.

The trial court denied defendant's motion, concluding that the parties entered into a valid marriage contract, not a same-sex marriage contract, and that it had the ability to dissolve a marriage that was lawfully entered into in this state. Soon thereafter the court entered a final judgment of divorce, from which defendant now appeals.[4]

### III. ANALYSIS

Defendant raises two issues. First, can a guardian or conservator file a complaint for divorce on behalf of the spouse over whom the guardianship or conservatorship is placed? Second, if the complaint was properly filed, did the circuit court have jurisdiction to enter a judgment of divorce between married persons purportedly of the same sex? We address these issues in that order below, and ultimately decide both questions in the affirmative.

---

[4] Plaintiff died during the pendency of this appeal. Niles, as personal representative of plaintiff's estate, substituted for plaintiff as appellee in this appeal. *Burnett v Burnett*, unpublished order of the Court of Appeals, entered January 2, 2013 (Docket No. 309640). Because plaintiff died after the judgment was entered and an appeal was pending, the case is not moot. See *McCormick v McCormick*, 221 Mich App 672, 678-679; 562 NW2d 504 (1997).

A. POWER TO FILE A DIVORCE COMPLAINT

Defendant's first dispositive motion, which the trial court denied, challenged the ability of a guardian or conservator to file a complaint for divorce on behalf of an incompetent spouse. This Court reviews de novo a trial court's decision on a motion for summary disposition, *Driver v Naini*, 490 Mich 239, 246; 802 NW2d 311 (2011), and reviews issues of statutory and court rule interpretation under the same standard, *Bint v Doe*, 274 Mich App 232, 234; 732 NW2d 156 (2007).

In *Houghton v Keller*, 256 Mich App 336, 338; 662 NW2d 854 (2003), we addressed this precise issue and concluded that "a guardian can bring an action for divorce on behalf of an incompetent spouse." Defendant acknowledges *Houghton* but argues that *Houghton* is either erroneous or otherwise not conclusive on the merits of the issue presented in this case. Specifically, defendant notes that *Houghton* cited to *Smith v Smith*, 125 Mich App 164; 335 NW2d 657 (1983), which in turn relied on the General Court Rules. Because the General Court Rules have been replaced by the Michigan Court Rules, defendant argues, *Houghton* cannot control the outcome of this case under the Michigan Court Rules.

For at least two reasons, this argument is without merit. First, *Houghton* did not solely rely on *Smith*, as the Court specifically considered the language contained in two Michigan court rules, MCR 3.202(A) and MCR 2.201(E). See *Houghton*, 256 Mich App at 338. Second, although the *Smith* Court relied on GCR 1963, 722.2[5] for its holding, the *Houghton* Court properly

---

[5] GCR 1963, 722.2 provided: " 'Actions for divorce and separate maintenance by or against incompetent persons shall be brought as provided in sub-rule 201.5.' " *Smith*, 125 Mich App at 166, quoting GCR 1963, 722.2. GCR 1963, 201.5(1) provided: " 'Whenever an infant or incompetent person has a guardian of his estate, actions may be brought and shall

concluded that several rules within subchapter 3.200 requires the same result reached in *Smith*.

Subchapter 3.200 is titled "Domestic Relations Actions," and MCR 3.201(A)(1) provides that subchapter 3.200 applies to actions for divorce, separate maintenance, and the annulment of a marriage. MCR 3.202(A) provides: "Except as provided in subrule (B), minors and incompetent persons may sue and be sued as provided in MCR 2.201." MCR 2.201(E) pertains to minors and incompetent persons and provides in relevant part as follows:

> (1) *Representation.*
>
> (a) If a minor or incompetent person has a conservator, actions may be brought and must be defended by the conservator on behalf of the minor or incompetent person.
>
> (b) If a minor or incompetent person does not have a conservator to represent the person as plaintiff, the court shall appoint a competent and responsible person to appear as next friend on his or her behalf, and the next friend is responsible for the costs of the action.
>
> (c) If the minor or incompetent person does not have a conservator to represent the person as defendant, the action may not proceed until the court appoints a guardian ad litem . . . .

Thus, contrary to defendant's argument, the current court rules specifically allow a guardian or conservator to bring an action for divorce on behalf of a mentally incompetent spouse. See *Houghton*, 256 Mich App at 338 ("We agree with the reasoning in *Smith* and conclude that, on the basis of MCR 3.202(A) and MCR 2.201(E), a guardian can bring an action for divorce on behalf of an incompetent spouse.").

---

be defended by such guardian in behalf of the infant or incompetent person.' " *Id.*, quoting GCR 1963, 201.5(1).

Defendant also argues that MCR 3.202(A) conflicts with MCL 552.11, which provides that "[a]n action for a divorce may be brought by a wife or a husband, and in all cases the respondent may answer the bill without oath or affirmation." Defendant argues that because MCL 552.11 only refers to a wife and a husband bringing an action for divorce, no one else can do so, even when acting on behalf of one spouse. A similar argument was rejected in *Houghton*, 256 Mich App at 338-339:

> Defendant appears to be suggesting that if the Legislature intended to provide for actions by a guardian, the Legislature would have expressly provided for this in MCL 552.6. However, the converse argument can be made that, had the Legislature intended to prohibit actions by guardians on behalf of a spouse, it would have expressly said so in the language of MCL 552.6. Nothing in the language of MCL 552.6 expressly prohibits guardians from filing a complaint for divorce on behalf of a party to the marriage. Defendant has not shown how the language in MCR 3.202(A), providing in relevant part that "incompetent persons may sue and be sued as provided in MCR 2.201," changes the statutory requirements for divorce.
>
> Defendant further argues that MCR 3.202(A) is unconstitutional because it is in conflict with the statutory requirements of MCL 552.6. However, as noted above, the court rule does not change the statutory provisions pertaining to divorce and, therefore, the premise of defendant's argument fails.

The above reasoning is equally applicable to this case. Had the Legislature intended to prohibit an action by a guardian on behalf of a spouse, it could have expressly said so in the language of MCL 552.11.[6]

---

[6] Defendant's policy argument—that allowing guardians to file for divorce on behalf of an incompetent spouse who never filed for divorce while competent could lead to divorces brought by family members

Nothing within the language of MCL 552.11 expressly prohibits a guardian or conservator from filing a complaint for divorce on behalf of an incompetent spouse. Consequently, we reject defendant's argument on this issue.

## B. JURISDICTION TO ENTER A DIVORCE

Turning now to the second issue raised by defendant, we must decide whether the trial court properly denied defendant's second motion for summary disposition, which challenged the trial court's authority to enter a divorce judgment. As we have already noted, this Court reviews de novo a trial court's decision on a motion for summary disposition. *Driver*, 490 Mich at 246. To the extent this Court's review requires consideration of subject-matter jurisdiction, our review is also de novo. *Pontiac Food Ctr v Dep't of Community Health*, 282 Mich App 331, 335; 766 NW2d 42 (2009). Issues of constitutional interpretation are likewise reviewed de novo. *Dep't of Transp v Tomkins*, 481 Mich 184, 190; 749 NW2d 716 (2008).

At issue is the meaning of article 1, § 25 of the Michigan Constitution of 1963. In interpreting constitutional provisions, the primary duty of the judiciary is to ascertain the purpose and intent of the provision at issue. *Adair v Michigan*, 486 Mich 468, 477; 785 NW2d 119 (2010). In doing so, courts apply the rule of common understanding: "[T]he interpretation given the provision should be the sense most obvious to the common understanding and one that reasonable minds, the great mass of the people themselves, would give it." *Id.* (quotation marks and citations omitted). Words should

---

(acting as guardians or conservators) merely for financial gain—is an interesting one. But those arguments are properly made to the Legislature or the Supreme Court (in its rulemaking function), not this Court.

be given their common and most obvious meaning, and consideration of dictionary definitions used at the time of passage for undefined terms can be appropriate. *Nat'l Pride at Work, Inc v Governor*, 481 Mich 56, 67, 69, 73, 75; 748 NW2d 524 (2008).

There is no dispute that a same-sex marriage is not recognized in Michigan. The constitutional amendment defining marriage approved by Michigan voters in 2004, and which is set forth in Const 1963, art 1, § 25, provides: "To secure and preserve the benefits of marriage for our society and for future generations of children, the union of one man and one woman in marriage shall be the only *agreement* recognized as a marriage or similar union for any purpose." (Emphasis supplied.) Based on this language, the marriage amendment provides that the only "agreement" recognized as a marriage is one made between a man and a woman. Consistent with the marriage amendment, MCL 551.1 renders invalid a marriage that is contracted between individuals of the same sex:

> Marriage is inherently a unique relationship between a man and a woman. As a matter of public policy, this state has a special interest in encouraging, supporting, and protecting that unique relationship in order to promote, among other goals, the stability and welfare of society and its children. A marriage *contracted between individuals of the same sex* is invalid in this state.[7] [Emphasis added.]

Consequently, the constitution and statutes of Michigan preclude the recognition or validity of a marriage contracted between two persons of the same sex. Or, as

---

[7] As the *Nat'l Pride* Court recognized, there are several other statutes that spell out what does, or does not, constitute a marriage in Michigan. *Nat'l Pride*, 481 Mich at 72 n 9. MCL 551.2, for example, provides: "So far as its validity in law is concerned, marriage is a civil contract between a man and a woman, to which the consent of parties capable in law of contracting is essential."

stated by our Supreme Court in *Nat'l Pride*, 481 Mich at 76-77, "the marriage amendment specifically states that the 'only' agreement that can be recognized as a marriage . . . is the union of one man and one woman." More specifically, the Court held:

> However, the marriage amendment specifically states that the "only" *agreement* that can be recognized as a marriage or similar union is the union of one man and one woman. "Only" means "the single one . . . of the kind; lone; sole[.]" *Random House Webster's College Dictionary* (1991). Therefore, a single *agreement* can be recognized within the state of Michigan as a marriage or similar union, and that single *agreement* is the union of one man and one woman. A domestic partnership does not constitute such a recognizable agreement.[8] [*Nat'l Pride*, 481 Mich at 76-77.] [Emphasis added.]

There is no dispute that when the parties entered into their marriage contract defendant was a man and plaintiff was a woman. Thus, the marriage contract was valid and enforceable under Michigan law at the time it was entered. And although defendant underwent gender reassignment surgery in 2003, that does not alter the undisputed fact that when the marriage contract was entered into, plaintiff was a woman and defendant was a man. Therefore, by granting a divorce from a marriage that was contracted into in this state between a man and a woman, the trial court did not act contrary to Michigan law.

---

[8] The marriage amendment's focus on the agreement to marry is consistent with Michigan law, which has always required (among other formalities) a contract between the marrying parties. See *Roszel v Roszel*, 73 Mich 133, 137; 40 NW 858 (1888); MCL 552.35. The amendment also confirmed what was longstanding Michigan law, i.e., that "[t]o constitute a perfect union, the contracting parties should be two persons of the opposite sexes . . . ." *In re Fitzgibbons' Estate*, 162 Mich 416, 420; 127 NW 313 (1910) (quotation marks and citation omitted).

We likewise reject defendant's argument that his alleged postoperative status somehow magically dissolved what was otherwise a valid marriage. Although, as we have pointed out, a valid marriage requires contractual assent between the parties, that is not all that is required. Indeed, it has long been true that a marriage is comprised of more than a civil contract. In *Kuntz v Kuntz*, 244 Mich 78, 81; 221 NW 285 (1928), the Supreme Court held: "Marriage is more than a civil contract. Rights are acquired and obligations assumed which the parties themselves may not annul. They are bound thereby unless the courts, acting under legislative authority, shall terminate the relation by a decree of divorce."

Our statutes also make clear that there are only certain limited circumstances under which a Michigan marriage can be annulled, and the circumstances presented by this case do not fall within those narrow circumstances. See MCL 552.1, 552.2, 552.3, 552.35, and *Rodenhiser v Duenas*, 296 Mich App 268, 279-281; 818 NW2d 465 (2012). Once validly entered into, one spouse's actions cannot unilaterally result in the legal dissolution of the marriage without court involvement. The circuit court had jurisdiction to enter a judgment of divorce for a marriage validly entered into between one man and one woman in Michigan.[9]

---

[9] Though our holding puts to rest defendant's challenge to the circuit court's jurisdiction, we point out that the constitution and relevant statutes explicitly state that only a marriage agreement between one man and one woman is recognized by Michigan law. Under the most obvious and commonly understood meaning of the words "man" and "woman," a postoperative male-to-female transsexual is not a "woman." *Random House Webster's College Dictionary* (2001) defines "man" as "an adult male person[.]" "Male," in turn, is defined as "a person bearing an X and Y chromosome pair in the cell nuclei and normally having a penis, scrotum, and testicles and developing hair on the face at adolescence" and "an organism of the sex or sexual phase that normally produces a

Affirmed. No costs, a question of public importance at issue. MCR 7.219(A).

MARKEY and WHITBECK, JJ., concurred with MURRAY, P.J.

---

sperm cell or male gamete." *Id.* "Woman" is defined as "an adult female person," and "female" is defined as "a person of the sex whose cell nuclei contain two X chromosomes and who is normally able to conceive and bear young" or "any organism of the sex or sexual phase that normally produces egg cells." *Id.* Based on these definitions, it would appear that defendant is not a woman under the marriage amendment and marriage statutes because he still has an X and Y chromosome pair and cannot—and never could—bear children. We note that other jurisdictions have reached this conclusion, see *Kantaras v Kantaras*, 884 So2d 155 (Fl App, 2004) and *In re Estate of Gardiner*, 273 Kan 191, 214; 42 P3d 120 (2002), but we need not do so here.