*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAXPAYERS FOR MICHIGAN CONSTITUTIONAL GOVERNMENT, STEVE DUCHANE, RANDALL BLUM, and SARA KANDEL,

Plaintiffs,

v

STATE OF MICHIGAN, DEPARTMENT OF TECHNOLOGY, MANAGEMENT AND BUDGET and OFFICE OF AUDITOR GENERAL,

Defendants.

FOR PUBLICATION
October 29, 2019
9:05 a.m.

No. 334663
Original Action

ON RECONSIDERATION

Before: BORRELLO, P.J., and METER and SHAPIRO, JJ.

SHAPIRO, J.

Taxpayer-plaintiffs bring this original action to enforce § 30 of the Headlee Amendment[1], which prohibits the State from reducing the total of state spending paid to all units of local government, taken as a whole, below that proportion in effect in fiscal year 1978-1979. Const

---

[1] Plaintiffs also seek to enforce § 25 of the Headlee Amendment, Const 1963, art 9, § 25. However, § 25 of the Headlee Amendment is an introductory paragraph to the Amendment that summarizes the revenue and tax limits imposed on the State and local governments by the other provisions of the Amendment. *Durant v State of Michigan*, 456 Mich 176, 182-183; 566 NW2d 272 (1997); *Waterford School District v State Board of Education (After Remand)*, 130 Mich App 614, 620; 344 NW2d 19 (1983), aff'd 424 Mich 364 (1985). The introductory sentences found in § 25 are not intended "to be given the substantive effect of creating specific rights and duties." *Waterford School District*, 130 Mich App at 620.

-1-

1963, art 9, § 30. The parties agree that the proportion of state spending to be paid to all units of local government taken collectively under § 30 is 48.97 percent. They disagree, however, with regard to what categories of state spending may be classified as "state spending to be paid to all units of local government" for purposes of § 30. Plaintiffs allege that accounting practices employed by the State have resulted in a persistent and growing underfunding of its § 30 revenue-sharing obligation. Count I of their complaint asserts that the State has violated § 30 by its practice of classifying as state spending paid to local government those moneys paid to school districts pursuant to Proposal A, Const 1963, art 9, § 11. Count II makes the same assertion as to moneys paid to public school academies ["PSAs"], colloquially known as charter schools, pursuant to Proposal A and MCL 380.501(1). Count IV seeks a determination that state funds directed to local governments for new state mandates may not be counted towards the proportion of state funds required by Section 30. According to plaintiffs, the improper inclusion of these expenditures in its calculations has enabled the State to displace state payments to local governments previously made for existing programs and services and, as a consequence, to force local governments to choose between increasing taxes and fees to fund programs and services previously funded by revenue-sharing payments from the State and reducing the scope of or eliminating altogether those programs and services.[2]

For the reasons set forth in this opinion we grant summary disposition in favor of the State on Count I and Count II and declare that the State did not violate § 30 by classifying Proposal A funding paid to school districts and PSA funding as state funds paid to local government. However, we grant summary disposition to plaintiff's on Count IV and declare that pursuant to §29, funding for new or increased state mandates may not be counted for purposes of §30. Finally, we grant mandamus relief and direct the State, and its officers and departments, to comply with the reporting and disclosure requirements of MCL 21.235(3) and MCL 21.241.

## BURDENS OF PROOF

### A. Causes of Action

Plaintiffs seek declaratory, injunctive and mandamus relief.[3]

It is a well-recognized proposition that the remedy required in an action to enforce a provision of the Headlee Amendment "comprises a resolution of the parties' prospective rights and obligations by declaratory judgment." *Wayne Co Chief Executive v Governor*, 230 Mich

---

[2] Plaintiffs also alleged that the State improperly classified as § 30 state spending those funds paid to maintain truck line roads. This allegation comprised the gravamen of Count III of plaintiffs' complaint. We dismissed Count III without prejudice upon stipulation of the parties. *Taxpayers for Michigan Constitutional Government*, unpublished order of the Court of Appeals, issued December 4, 2017 (Docket No. 334663).

[3] At oral argument before the Court, plaintiffs withdrew their request for monetary relief for past shortfalls in the State's payments to local government in satisfaction of its § 30 revenue-sharing obligation.

App 258, 264; 583 NW2d 512 (1998); see also *Adair v Michigan*, 470 Mich 105, 112; 680 NW2d 386 (2004); *Durant v Michigan*, 456 Mich 175, 204-206; 566 NW2d 272 (1997); *Oakland Co v Michigan*, 456 Mich 144, 166; 566 NW2d 616 (1997). "The plaintiff in a declaratory-judgment action bears 'the burden of establishing the existence of an actual controversy, as well as the burden of showing that . . . it has actually been injured or that the threat of imminent injury exists.' " *Adair v Michigan (On Second Remand)*, 279 Mich App 507, 514; 760 NW2d 544 (2008), aff'd in part and rev'd in part on other grounds *Adair v Michigan*, 486 Mich 468 (2010), quoting 22A Am Jur 2d, Declaratory Judgments, § 239, p 788; see also *Adair v Michigan*, 486 Mich 468, 482-483; 785 NW2d 119 (2010) (because the plaintiffs met their initial burden of demonstrating a violation of the "prohibition of unfunded mandates" or "POUM" clause of § 29 of the Headlee Amendment, they were entitled to a declaratory judgment unless the State demonstrated that the plaintiff school districts' costs were not increased as a result of the requirements or that the costs incurred were not necessary).

Mandamus is an extraordinary remedy. *Univ Medical Affiliates, PC v Wayne County Executive*, 142 Mich App 135, 142; 369 NW2d 277 (1985). Thus, the issuance of a writ of mandamus is only proper where (1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists, legal or equitable, that might achieve the same result. *Rental Properties Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 518; 866 NW2d 817 (2014). "Within the meaning of the rule of mandamus, a 'clear, legal right' is one 'clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided." *Univ Medical Affiliates*, 142 Mich App at 143; see also *Rental Properties Owners Ass'n of Kent Co*, 308 Mich App at 518-519. "A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hillsdale Co Senior Services, Inc v Hillsdale Co*, 494 Mich 46, 63 n 11; 832 NW2d 728 (2013) (quotation marks and citation omitted); see also *Berry v Garrett*, 316 Mich App 37, 42; 890 NW2d 882 (2016). "The burden of showing entitlement to the extraordinary remedy of a writ of mandamus is on the plaintiff." *White-Bey v Dep't of Corrections*, 239 Mich App 221, 223; 608 NW2d 883 (1999).

The moving party bears the burden of proving an entitlement to injunctive relief. *Detroit Fire Fighters Ass'n v City of Detroit*, 482 Mich 18, 34; 753 NW2d 579 (2008). The moving party carries this burden by proving that the four traditional elements favor the issuance of a preliminary injunction by a preponderance of the evidence. *Id*.; *Dutch Cookie Machine Co v Vande Vrede*, 289 Mich 272, 280; 286 NW 612 (1939). In determining whether to issue a preliminary injunction, a trial judge must consider the following factors:

> (1) harm to the public interest if the injunction issues; (2) whether harm to the applicant in the absence if temporary relief outweighs the harm to the opposing party if relief is granted; (3) the likelihood that the applicant will prevail on the merits; and (4) a demonstration that the applicant will suffer irreparable injury if the relief is not granted. [*Thermatool Corp v Borzym*, 227 Mich App 366, 376; 575 NW2d 334 (1998); see also *Detroit Fire Fighters Ass'n*, 482 Mich at 34.]

**B. Summary Disposition**

At the direction of the Court, the parties have filed cross-motions for summary disposition.[4] Both plaintiffs and the State seek summary disposition pursuant to MCR 2.116(C)(10). Summary disposition is appropriate under (C)(10)

> when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). The moving party must specifically identify the undisputed factual issues and has the initial burden of supporting its position with documentary evidence. *Id*. at 455; [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999)]. The responding party must then present legally admissible evidence to demonstrate that a genuine issue of material fact remains for trial. *Id*.; *Smith, supra* at 455 and n 2. [*E R Zeiler Excavating, Inc v Valenti Trobec Chandler Inc*, 270 Mich App 639, 644; 717 NW2d 370 (2006).]

Plaintiffs also seek summary disposition pursuant to MCR 2.116(C)(9). Summary disposition may be granted under this subrule when "[t]he opposing party has failed to state a valid defense to the claim asserted against him or her." A motion under this subrule tests the sufficiency of a defendant's pleadings by accepting all well-pleaded allegations as true. *Lepp v Cheboygan Area Schools*, 190 Mich App 726, 730; 476 NW2d 506 (1991). If the defenses are so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery, then summary disposition under this rule is proper. *Id*. (internal punctuation and citation omitted).

**STANDING**

Before we can reach the merits of the substantive questions posed by plaintiffs' suit, we must revisit the issue of standing. The State challenged plaintiffs' standing to commence this Headlee enforcement action in its answer to plaintiffs' original complaint. We summarily dismissed the standing challenge as pertains to individual plaintiffs Steve Duchane, Randall Blum and Sara Kandel, but reserved our ruling as pertains to lead plaintiff, Taxpayers for Michigan Constitutional Government ["TMCG"]. We explained:

> [T]he Court dismisses defendants' standing challenge, but only as to the individual taxpayer plaintiffs, i.e., Duchane, Blum, and Kandel. Under § 32, "[a]ny taxpayer of the state has standing to bring suit to enforce the provisions of the Headlee Amendment." *Mahaffey v Attorney General*, 222 Mich App 325, 340 (1997). Because all of plaintiffs' claims and requested forms of relief are part of

---

[4] *Taxpayers for Michigan Constitutional Government v State of Michigan*, unpublished order of the Court of Appeals, issued May 9, 2017 (Docket No. 334663).

-4-

an action seeking to enforce Headlee, the individual taxpayer plaintiffs have § 32 standing.

> However, vis-à-vis the lead plaintiff, Taxpayers for Michigan Constitutional Government (TMCG), the Court reserves its standing determination. "[A]n organization has standing to advocate for the interests of its members if the members themselves have a sufficient interest." *Lansing Sch Ed Ass 'n v Lansing Bd of Ed,* 487 Mich 349, 373 n 21 (2010) (LSEA). However, TMCG bears the burden of demonstrating that it has standing, see, e.g., *Moses Inc v Southeast Mich Council of Gov'ts*, 270 Mich App 401, 414 (2006), and TMCG is, with regard to plaintiffs' request for a declaratory judgment, required to "plead and prove facts which indicate an adverse interest," *LSEA*, 487 Mich at 372 n 20 (quotation marks and citation omitted; emphasis added). See also MCR 2.605(A)(l) (stating the "actual controversy" requirement for declaratory judgments). Because TMCG has failed to plead or prove the facts necessary to carry its burden of demonstrating that it has standing – specifically, to demonstrate whether its membership has a sufficient interest in this matter to afford organizational standing – the Court holds in abeyance its decision on this issue. The parties may further address the question of TMCG's standing in their respective motions for summary disposition and in any related filings. [*Taxpayers for Michigan Constitutional Government v State of Michigan*, unpublished order of the Court of Appeals, issued May 9, 2017 (Docket No. 334663).]

We now return to the question of standing and, after a review of the documentation supplied by plaintiffs, we dismiss the remainder of the State's standing challenge as without merit.

Lead plaintiff TMCG represents it is "a non-partisan, non-profit, tax exempt organization founded by taxpayers, municipal leaders, educators and lawyers dedicated to ensuring the State of Michigan follows the word of law as written in the state Constitution and fulfills the revenue sharing requirements guaranteed by the Headlee Amendment."[5] As we observed in our May 9, 2017 order, "an organization has standing to advocate for the interest of its members if the members themselves have a sufficient interest." *LSEA*, 487 Mich at 373 n 21. Plaintiffs append to their motion for summary disposition as Plaintiffs' Exhibit 10 the affidavit of individual plaintiff Steven Duchane, who attests to being one of the founding members and the Treasurer of TMCG. Duchane also attests that each of TMCG's 20 individual members is a Michigan resident and taxpayer. He further attests that TMCG has 20 "municipal members," composed of cities, villages and townships. Because the individual members, as taxpayers, have standing under Const 1963, art 9, § 32 to bring this Headlee enforcement action, TMCG has standing to bring suit in its representative capacity as to these members. *LSEA*, 487 Mich at 373 n 21. Likewise, because units of local government, including cities, villages and townships, are considered "taxpayers" under § 32 for purposes of vindicating the rights of their respective constituents, see *Oakland Co v State of Michigan*, 456 Mich 144, 167; 566 NW2d 616 (1997);

---

[5] www.michcongov.org, home page, accessed March 13, 2019.

*City of Riverview v State of Michigan*, 292 Mich App 516, 520 n 1; 808 NW2d 532 (2011), TMCG has standing to bring suit in its representative capacity as to its municipal members, *LSEA*, 487 Mich at 373 n 21. The State's assertion to the contrary fails for lack of factual and legal support.

## STATE SPENDING AND § 30

### A. Const 1963, art 9, § 30

At its core, plaintiffs' suit seeks to answer a single legal question, which is whether certain categories of state spending, i.e., payments to school districts guaranteed by Const 1963, art 9, § 11, payments to PSAs guaranteed by Const 1963, art 9, § 11 and MCL 380.501, and payments for state-mandated activities and services under Const 1963, art 9, § 29, constitute state spending to local governments under § 30 of the Headlee Amendment. The question posed by this suit is a novel one. In seeking its answer, we are guided in our application of § 30 by the principles governing the construction of constitutional provisions.

"The goal of the judiciary when construing Michigan's Constitution is to identify the original meaning that its ratifiers attributed to the words used in a constitutional provision." *CVS Caremark v State Tax Comm*, 306 Mich App 58, 61; 856 NW2d 79 (2014). "In performing this task, we employ the rule of common understanding." *Id*. "Under the rule of common understanding, we must apply the meaning that, at the time of ratification, was the most obvious common understanding of the provision, the one that reasonable minds and the great mass of the people themselves would give it." *Id*. "Words should be given their common and most obvious meaning . . . ." *In re Burnett Estate*, 300 Mich App 489, 497-498; 834 NW2d 93 (2013). "Further, every provision must be interpreted in the light of the document as a whole, and no provision should be construed to nullify or impair another." *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 156; 665 NW2d 452 (2003). The interpretation of a constitutional provision takes account of the purpose sought to be accomplished by the provision. *Adair v Michigan*, 497 Mich 89, 102; 860 NW2d 93 (2014).

Section 30 provides:

> The proportion of total state spending paid to all units of Local Government, taken as a group, shall not be reduced below that proportion in effect in fiscal year 1978-79. [Const 1963, art 9, § 30.]

For purposes of the Headlee Amendment, the term "Local Government" is defined in § 33 of that Amendment as "any political subdivision of the state, including, but not restricted to, school districts, cities, villages, townships, charter townships, counties, charter counties, authorities created by the state, and authorities created by other units of local government." Const 1963, art 9, § 33.

### B. Proposal A Payments to School Districts

State funding disbursed to local school districts through Proposal A and the State School Aid Act of 1979, MCL 388.1601 *et seq*., constitutes voter-sanctioned payments of state funding to a specific unit of local government, i.e., public school districts. Nevertheless, plaintiffs argue

that Proposal A spending is a category of state funding that may not be classified § 30 revenue sharing. They argue that classifying Proposal A funding as § 30 revenue sharing effectively shifts the State's tax burden to local government units. A shifting of the tax burden occurs, according to plaintiffs, because the Proposal A payments supplant "other State spending previously paid to Local Governments, placing a tax burden on Local Governments to further raise local taxes in order to offset lost State revenue." We find no support in the plain language of § 30 to sustain such a claim.

Although § 30 embodies and effectuates the anti-shifting purpose referenced in § 25 of the Headlee Amendment, *Schmidt v Dep't of Education*, 441 Mich 236, 254; 490 NW2d 584 (1992), the State's inclusion of Proposal A funds paid to school districts does not trigger a forbidden tax shift. Section 30 plainly provides that "[t]he proportion of total state spending paid to all units of Local Government, *taken as a group*, shall not be reduced below that proportion in effect in fiscal year 1978-79." (Italics added.) The inclusion of the phrase "taken as a group" in § 30 "clearly requires that the overall percentage allotment of the state budget for local units of government must remain at 1978 levels." *Durant v State Bd of Ed*, 424 Mich 364, 393; 381 NW2d 662 (1985). In other words, "§ 30 only requires that state funding of all units of local governments, taken as a group, be maintained at 1978-79 levels." *Id*. Our Supreme Court expressly rejected, as a "strained interpretation of an unambiguous statement of intent by the voters," the proposition that § 30 mandated that each individual unit of government must receive in perpetuity the same proportion of the allotment for local government as it received in 1978. *Id*. Thus, § 30 "does not guarantee any individual local unit of government, or indeed any type of unit (all cities, for example), that it will always either get the same dollars as the year before or even the same share of state dollars." Fino, *A Cure Worse Than the Disease? Taxation and Finance Provisions in State Constitutions*, 34 Rutgers L J 959, 1003 (2003). Rather, the voters intended, as revealed in the plain language of § 30, that the State be free from time to time to rebalance how § 30 revenue sharing is distributed among "all units of Local Government, taken as a group" so long as the overall proportion of funding remains at the constitutionally-mandated level. The inclusion of Proposal A funding in § 30 spending reflects a constitutionally-sanctioned rebalancing of the distribution of that revenue sharing. Plaintiffs' argument to the contrary is an argument without foundation in the plain language of § 30. Absent that constitutional foundation, their challenge falls. The State is entitled to summary disposition on Count I of plaintiffs' complaint.

## C. Public School Academy Funding

Plaintiffs argue that state aid to PSAs does not fall within the scope of § 30 funding because it is not a "local unit of government." We conclude, however, that state funding of PSAs constitutes funding of a local unit of local government for the purpose of calculating state aid under the Headlee Amendment.

It is undisputed that "school districts" constitute a "unit of local government" as defined in § 33 of the Amendment. Const 1963, art 9, § 33. The question then is whether PSAs are "school districts" for purposes of calculating state funding of education. We answer that question affirmatively in light of the Revised School Code, MCL 380.1 *et seq.*, which provides that "[a] public school academy . . . is a school district for purposes of section 11 of article IX of the state constitution of 1963 . . . ." MCL 380.501(1). The constitutional provision referred to

mandates that "[t]here shall be established a state school aid fund which shall be used exclusively for aid to school districts, higher education, and school employees' retirement systems, as provided by law." Const 1963, art 9, § 11. In addition, the School Aid Act, MCL 388.1601 *et seq.*, includes PSAs in the definition of "district." MCL 388.1603(7). To receive state funding, PSAs must receive a "district code" from the Department of Education. MCL 388.1608b(1). Pursuant to these provisions, PSAs receive state funding earmarked for school districts.

Plaintiffs argue that state funds directed to PSAs should not be counted as state funds directed to school districts for purposes of the Headlee Amendment because PSAs do not resemble school districts in many other ways. Indeed, PSAs are school districts for a "limited purpose." OAG 1995-1996, No. 6915, p204 (September 4, 1996). See also OAG 2003-2004, No. 7154, p121-122 (March 31, 2004).[6] Nevertheless, PSAs are school districts for the purpose at issue in this case, i.e., the receipt of state school aid. Because state funding for PSAs is considered aid to a school district by law, we see no basis to not count those monies when calculating state spending paid to local government.

Plaintiffs' other argument is that PSAs could not have been understood as "school districts" when the Headlee Amendment was ratified. It is unlikely that the Headlee voters specifically intended that aid to PSAs would count as state aid to local governments considering that PSAs did not yet exist.[7] For the same reason, however, there is no reason to conclude that the voters specifically intended to exclude PSA funding from that calculation. What is clear is that the voters almost certainly understood that the state has discretion in how it chooses to "maintain and support a system of free public elementary and secondary schools . . . ." Const 1963, art 8, § 2. As the Supreme Court stated in *Council of Organizations & Others for Educ About Parochiaid v Governor*, 455 Mich 557; 566 NW2d 208 (1997), "[t]he Legislature has had the task of defining the form and the institutional structure through which public education is delivered in Michigan since the time Michigan became a state." *Id*. at 571, citing Const 1835, art 10, § 3.[8]

Significantly, there is no language in the Headlee Amendment showing an intent to limit this ongoing authority of the state to define and fund school districts. Thus, the text does not

---

[6] For example, PSAs are not geographically limited, are not governed by an elected board and cannot levy taxes.

[7] The Headlee Amendment was ratified in 1978. *Citizens Protecting Michigan's Constitution*, 503 Mich 42, 103 n 189; 921 NW2d 247 (2018). The Legislature authorized the creation of PSAs in 1993. 1993 PA 362.

[8] *Council of Organizations* dealt with a parallel question also arising under MCL 380.501(1), i.e., a challenge to the constitutionality of the provision deeming PSAs to be "public schools" for purposes of Article 8, § 2 of the state Constitution. The Supreme Court upheld the Legislature's classification of PSAs as public schools. See *Council of Organizations*, 455 Mich at 571-584.

compel the conclusion sought by plaintiffs. We have also reviewed the record presented to us by the parties and find no evidence that would demonstrate an intent either to limit the state's authority to define and fund school districts or to specifically bar the state from later defining the term "school district" to include PSAs.

The Legislature lawfully defined PSAs as school districts for the purposes of receiving state aid. Given that, we see no reason to overrule the state's decision to count those funds as payments to local government under the Headlee Amendment. Put simply, we decline to hold that PSAs are school districts for purposes of receiving state aid, but not school districts for purposes of determining how much state aid was received by school districts.[9]

### D. Section 29 Mandates

In Count IV of their complaint, plaintiffs seek, in part, a judgment from this Court declaring that state spending to fund state-mandated local services and activities as required by § 29 of the Headlee Amendment may not be included in the State's calculation of the proportion of total state spending paid to units of local government, taken as a group, under § 30. According to plaintiffs, when § § 29 and 30 are read together, they require the State to fully fund the necessary implementation costs of any new mandate imposed on a unit of local government and to provide this funding in addition to the funding paid in satisfaction of the State's § 30 revenue-sharing obligation. We agree.

Const 1963, art 9, § 29 provides:

> The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs.

The first sentence of § 29 speaks only to "existing activities" and so "aimed at existing services or activities already required of[, or otherwise performed by,] local government" at the time the Headlee Amendment became effective. *Durant*, 424 Mich at 379. This sentence "prohibits reduction of the state proportion of necessary costs with respect to the *continuation* of state-mandated activities or services." *Judicial Attorneys Ass'n v State of Michigan*, 460 Mich 590, 595; 597 NW2d 113 (1999) (emphasis added), quoting favorably *Mayor of the City of Detroit v State of Michigan*, 228 Mich App 386, 396; 579 NW2d 378 (1998).

---

[9] Because we conclude that PSA are school districts for purposes of calculating state aid under the Headlee Amendment, we need not address the question whether a PSA constitutes some other "unit of local government."

The second sentence of § 29 speaks only to "[a] new activity or service . . . beyond that required by existing law . . . ." Unlike the first sentence, it does not speak to mandates that were in existence prior to the Headlee Amendment, i.e., it "addresses future services or activities." *Durant*, 424 Mich at 379.

In sum, § 29 "prohibits the state from reducing its proportion of the necessary costs of *existing activities* while it requires the state to pay the increased necessary costs in full when it mandates *new activities* or mandates activities at an increased level." *Id*. at 597-598 (emphasis added). In *Schmidt*, 441 Mich at 257 n 24, our Supreme Court observed, in relevant part:

> A short time after the Headlee Amendment was ratified by the voters, its drafters prepared notes reflecting their view of the amendment's intent. Although the drafters' notes are not authoritative, *Durant*, [424 Mich at 382 n 12], they are one piece of evidence concerning the common understanding of the voter's intent. [See also, *Durant*, 456 Mich at 196; *Macomb Co Taxpayers Ass'n v L'anse Creuse Public Schools*, 455 Mich 1, 8-9; 564 NW2d 457 (1997).]

The drafters' notes with regard to § 30 provide, in relevant part:

> The primary intent of this section was to prevent a shift in tax burden, either directly or indirectly from state to local responsibility. The phrase "taken as a group" permits the legislature to reallocate funds to local units of government, i.e., geographically or from one unit to another. It was the drafters' intent to rely on the political process to effect such allocations and not to limit the legislature's ability to create more effective and efficient governmental entities or to eliminate those local units which no longer serve any utilitarian purpose.
>
> Additional or expanded activities mandated by the state, as described in Section 29 would tend to increase the proportion of total state spending paid to local government above that level in effect when this section becomes effective. [Plaintiffs' Brief in Support, Ex 7, Drafters' Notes – Tax Limitation Amendment (Proposal E, approved by the electors on November 7, 1978, as an Amendment to the Michigan Constitution of 1963), § 30, p 11.]

This note weighs in favor of plaintiffs' position, as it evinces an intent that state-funding obligations arising from new § 29 obligations are to be paid in addition to § 30 revenue sharing. Likewise, the differing purposes of these sections support plaintiffs' position. State funding under the second sentence of § 29 is intended to offset the necessary costs of new burdens placed on units of local government whereas § 30 state funding is intended to preserve the 1978 level of state funding to units of local government to be used for then-extant services or activities. If state spending to fund new state-mandates under § 29 may be included in the State's calculation of the proportion of total state spending paid to units of local government, taken as a group, under § 30, then § 29 state funding for new mandates would supplant state spending intended for local use and, thereby, allow funding for new mandates to serve two conflicting purposes, i.e., to

fund new state mandates as well as to the 1978-1979 level of state funding to local governments. This double-duty would force units of local government to choose between cutting services or raising taxes to make up for the funds lost to pay for the necessary costs of new mandates.[10] Such a result is at odds with the proper balancing of the "dual goals of a) preserving the Legislature's ability to enact necessary and desirable legislation in response to changing times and conditions and b) guaranteeing a predictable level of minimum funding" because this result accords more discretion to the Legislature than envisioned by the Headlee Amendment. *Judicial Attorneys Ass'n*, 460 Mich at 605. That result is also at odds with the principles of constitutional construction, which provide that each provision is of equal dignity and none may be construed so as to nullify or substantially impair another. *Durant v Dep't of Education (On Second Remand)*, 186 Mich App 83, 115; 463 NW2d 461 (1990). Accordingly, plaintiffs are entitled to summary disposition on Count IV of their complaint.

### E. Mandamus Relief

Shortly after the Headlee Amendment was enacted, our Legislature passed 1979 PA 101, codified at MCL 21.231 *et seq.*, to implement the provisions of the Headlee Amendment. Const 1963, art 9, § 34; *Adair v Michigan*, 497 Mich 89, 103 n 31; 860 NW2d 93 (2014). Section 5 of the Act contains the following pertinent provision:

> The governor shall include in a report which is to accompany the annual budget recommendation to the legislature, those amounts which the governor determines are required to make disbursements to each local unit of government for the necessary cost of each state requirement for that fiscal year and the total amount of state disbursements required for all local units of government. [MCL 21.235(3).]

Section 11 of the Act provides:

> (1) Within 6 months after the effective date of this act the department shall collect and tabulate relative information as to the following:
>
> (a) The state financed proportion of the necessary cost of an existing activity or service required of local units of government by existing law.
>
> (b) The nature and scope of each state requirement which shall require a disbursement under section 5.1.

---

[10] Judge BORRELLO points out that not counting the costs of new services or activities toward the State's funding obligation could result in the State having to provide funds to local governments in excess of 48.97 percent of total spending. However, § 30 sets 48.97 percent as the floor, not the ceiling, of total state spending to be provided to local governments. Moreover, the Headlee Amendment does not define any mechanism by which a reduction of required local services or activities could be offset against the cost of new mandates. And there is no evidence in the record that the State has ever defined or employed such a mechanism.

(c) The nature and scope of each action imposing a potential cost on a local unit of government which is not a state requirement and does not require a disbursement under this act.

(2) The information shall include:

(a) The identity or type of local unit and local unit agency or official to whom the state requirement or required existing activity or service is directed.

(b) The determination of whether or not an identifiable local direct cost is necessitated by state requirement or the required existing activity or service.

(c) The amount of state financial participation, meeting the identifiable local direct cost.

(d) The state agency charged with supervising the state requirement or the required existing activity or service.

(e) A brief description of the purpose of the state requirement or the required existing activity or service, and a citation of its origin in statute, rule, or court order.

(3) The resulting information shall be published in a report submitted to the legislature not later than January 31, 1980. A concurrent resolution shall be adopted by both houses of the legislature certifying the state financed proportion of the necessary cost of an existing activity or service required of local units of government by existing law. This report shall be annually updated by adding new state requirements which require disbursements under section 5 and each action imposing a cost on a local unit of government which does not require a disbursement under this act. [MCL 21.241.]

Plaintiffs seek a writ of mandamus to force the state and its officers and departments to honor the annual disclosure and reporting duties set forth in both MCL 21.235(3) and MCL 21.241. We grant mandamus as requested.

It is clear that § 11 establishes a legislatively-mandated duty that the State, through its officers and departments, collect, report and place on the public record certain information regarding the State's compliance with the Headlee Amendment. The State has breached this duty. It is equally clear that the acts required by these statutory provisions are ministerial, and that the failure of the State to undertake such acts undermines the right and role of taxpayer oversight and enforcement conferred by Const 1963, art 9, § 32. As noted by plaintiffs, the failure of the State to comply with the dictates of MCL 21.235(3) and MCL 21.241 "prevents taxpayers from knowing what mandated activity is funded and what is unfunded" and "specifically identifying mandated activity that is included within art. 9, § 30 calculations and what, if any, mandated activity is not included." For these reasons, we deem mandamus to be an appropriate remedy and hereby direct the State through its officers and departments to hereafter comply with the annual reporting requirements of MCL 21.235(3) and MCL 21.241.

**COSTS & ATTORNEY FEES**

Summary disposition and a declaratory judgment are granted, in part, to the State on Count I and Count II of plaintiffs' complaint and to plaintiffs on Count IV of plaintiffs' complaint consistent with this opinion. Mandamus relief pursuant to Count IV is prospective only as the plaintiffs have waived their claim to compensation for the State's past practice of counting funding for new or increased mandates for purposes of Section 30. Plaintiffs may recover costs and a reasonable attorney fee as allowed by Const 1963, art 9, § 32 and *Adair v State of Michigan*, 486 Mich 468, 494; 785 NW2d 119 (2010), limited to the costs and fees incurred during the litigation related to Count IV of their complaint.


/s/ Douglas B. Shapiro

# Court of Appeals, State of Michigan

# ORDER

Taxpayers for Michigan Constitutional Government v State of Michigan

Docket No.    334663

Stephen L. Borrello
Presiding Judge

Patrick M. Meter

Douglas B. Shapiro
Judges

The Court orders that the motion for immediate consideration is GRANTED.

The Court further orders that the motion for reconsideration is GRANTED, and this Court's opinion issued July 30, 2019 is hereby VACATED.  A new opinion is attached to this order.

The Court orders that the motion to stay the effect of this Court's July 30, 2019 published opinion is DENIED.

/s/ Stephen L. Borrello

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

October 29, 2019
Date

Chief Clerk